**Charles Russell READ**

v.

**PHILLIPS PETROLEUM COMPANY et al.**

Civ. A. No. 77–940.

United States District Court, E. D. Louisiana.

Nov. 8, 1977.

Geoffrey H. Longenecker, New Orleans, La., for plaintiff.

Walter B. Stuart, IV, Jack M. Weiss, Clinton W. Shinn, Paul O. H. Pigman, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., Kenneth Pitre, Eunice, La., Berkman J. Manuel, Mamou, La., for defendants.

ALVIN B. RUBIN, Circuit Judge: [*]

One of several persons, each of whom owns an identical interest in minerals with respect to a tract of land, sues the owner of

[*] Sitting as District Judge by designation of Chief Judge John R. Brown.

the tract of land, who as lessor leased the tract to an oil company, and the oil company. The plaintiff alleges that the oil company drained minerals from the land while developing an adjacent tract, and that the owner-lessor failed to perform his legal duties with respect to the owners of the mineral interest.

Jurisdiction is based on diversity. If all the owners of mineral interests with respect to the tract of land involved had joined as plaintiffs, diversity would not exist between at least one mineral claimant and the owner-lessor. Hence, that defendant moves for dismissal of the suit for lack of jurisdiction. For the reasons set forth below, the motion is GRANTED.

## I

On January 19, 1965, the plaintiff, Charles Read, together with his eight brothers and sisters, all of whom had inherited interests in the parcel of land involved ("the Vezina tract"), conveyed these interests to the defendant Wilba Vezina. In the contract of sale, the plaintiff and his brothers and sisters reserved an interest in the future development of "oil, gas or other minerals except sulphur" on the Vezina tract.[1]

Adjacent to the Vezina tract is a tract of land owned by Wallace J. Read ("the Read tract"), which had been leased by Read to the defendant Phillips Petroleum Company ("Phillips") for mineral development. In July, 1972, Vezina, as lessor, and Phillips, as lessee, executed a mineral lease covering the Vezina tract as well.

In April, 1974, Phillips spudded a well on the Read tract. The plaintiff alleges that this well, once placed in production, drained natural gas from the Vezina tract. The plaintiff here seeks a declaration of his mineral rights under his contract of sale with Vezina and under Vezina's lease to Phillips, an accounting for minerals that the defendants are alleged to have wrongfully converted, and damages for the defendants'

alleged breach of contract with the plaintiff.

Charles Read brought this action individually and on his own behalf. Jurisdiction is predicated on the parties' diversity of citizenship, 28 U.S.C.A. § 1332(a). The plaintiff Read is a citizen of Ohio. The defendant Vezina is a citizen of Louisiana. Phillips is a Delaware corporation with its principal office in Oklahoma, and must be considered a citizen of those two states for purposes of determining whether jurisdiction exists, 28 U.S.C.A. § 1332(c).

The defendant Vezina contends, however, that jurisdiction appears to exist in this case only because of the "collusive" nonjoinder of Charles Read's brothers and sisters, who sold their interests in the Vezina tract as part of the same transaction in which Read participated, and who have claims identical to his. These potential claimants include at least one brother who, like the defendant Vezina, is a citizen of Louisiana. It is undisputed that, had all the brothers and sisters who sold their interests to Vezina joined as plaintiffs in this suit, the presence on both sides of at least one citizen of Louisiana would have defeated the exercise of diversity jurisdiction by this court. *Strawbridge v. Curtiss,* 1806, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435.

The deposition of the plaintiff's brother, Ned Newton Read, who is a citizen of Louisiana, indicates that each member of the Read family has an interest in the minerals under the Vezina tract and that all the brothers and sisters are represented by the same counsel. From Ned Read's testimony, it is reasonably inferable that counsel who represented all of the family knew of the potential problem of incomplete diversity, and deliberately abstained from joining all his clients as plaintiffs in federal court.

However, the failure to join all possible plaintiffs, even if purposeful, is not necessarily collusive within the terms of 28 U.S.C.A. § 1359. The aim of Section 1359 is

1. The nature of the reserved interest is disputed. Determination of that issue is necessary to resolve a motion for summary judgment also

pending. But we cannot reach that issue if the suit is dismissed for lack of jurisdiction over all parties who should be joined.

to prevent improper attempts to manufacture jurisdiction through some artifice. Here, none of the requisites to jurisdiction is contrived. The plaintiff is a properly interested party, and his citizenship is genuinely diverse from that of either defendant. Unless the plaintiff for some reason cannot maintain this action without the participation of some other possible plaintiff whose citizenship is not diverse from that of Vezina, an authentic basis for the exercise of federal jurisdiction exists.

## II

Rule 19 of the Federal Rules of Civil Procedure sets forth the guidelines for deciding which parties must be joined in a suit in order for the court's decision to be fair and effective. It first directs that a person who can be joined should be joined if his absence will prevent the court from granting complete relief among the parties, if disposition of the action in his absence may impair his rights, or if disposition of the action in his absence will subject any present party to the risk of multiple litigation or inconsistent obligations. Rule 19(a), Fed.R.Civ.Proc. The rule then lists the criteria by which the court is to determine whether a lawsuit should proceed in the absence of a person who should be joined, but cannot be. Rule 19(b), Fed.R.Civ.Proc.[2]

■ As to the threshold inquiry, it is clear that the plaintiff's brothers and sisters are persons who should be joined if feasible. Their rights derive not only from the same transaction, but also from the same provisions of the same contract of sale. The plaintiff's unsuccessful assertion of his rights in this suit would not be binding on other family members, but could have at least precedential effect in a subsequent suit by his brothers and sisters. On the other hand, to the extent an unsuccessful assertion of the plaintiff's rights in this suit is not binding on his brothers and sisters, the defendants run an obvious risk of multiple litigation and inconsistent obligations.

■ Because joinder of all of the plaintiff's brothers and sisters cannot be accomplished without divesting the court of jurisdiction, it is necessary to assess whether "in equity and good conscience" this action should proceed among the present parties under the criteria of Rule 19(b). The key question is whether, in view of the potential prejudice to some of the present parties if the action proceeds among them, protective measures exist by which "the prejudice can

**2.** Rule 19 reads in part:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

This case raises no issue as to the adequacy of potential relief, the third criterion specified in Rule 19(b).

be lessened or avoided," and whether such protective measures are warranted in view of the availability of other remedies to the plaintiff. Focusing on this question requires attention first to the last criterion set forth in Rule 19(b): "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Cf. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 1968, 390 U.S. 102, 109–110, 88 S.Ct. 733, 737–738, 19 L.Ed.2d 936.

A complete adjudication of all the claims raised by the plaintiff in this suit, as well as of all the potential claims of his brothers and sisters, is conveniently available in the Louisiana state court. The state court has subject matter jurisdiction over all of the causes of action, and would have personal jurisdiction over all interested parties. It does not matter whether the plaintiff's suit for declaratory relief is viewed as an action to enforce a property right or as an action in contract. If the former, the state court has *in rem* jurisdiction, which permits process to run against all interested parties. La.C.Civ.Proc., art. 8. If the action is one in contract, personal jurisdiction still exists over all non-resident parties because the cause of action arises from "the non-resident's . . . having an interest in, using, or processing a real right or immovable property in this state," La.R.S. § 13.3201(e), namely, a mineral interest, La.C.Civ.Proc., art. 3664.[3] Such long-arm jurisdiction would confer personal jurisdiction over the defendants on the plaintiff's claim for conversion as well.

The Louisiana forum would provide an opportunity for all claims to be resolved in a single proceeding. The plaintiffs could bring suit against both the resident and non-resident defendants. The defendants could insure joinder of all potential plaintiffs by invoking the state necessary parties rule, La.C.Civ.Proc., art. 642.

Such convenience contrasts obviously with the difficulties a federal court would face in entertaining the same suit. The only conceivable means of protecting the defendants from multiple litigation and possibly inconsistent obligations would be resort to some form of third-party practice, as suggested by the 1966 Advisory Committee on Rules. Advisory Comm. on Rules Note, Rule 19, Fed.R.Civ.Proc., 28 U.S.C.A. (1966). Merely trying to conceive, however, what third-party practice would protect the defendants only indicates further the procedural morass into which this court would be stepping by entertaining this suit.

Neither of the defendants can implead the potential claimants because neither of them is asserting any liability due from the plaintiffs, Fed.R.Civ.Proc., Rule 14(a). Phillips can interplead the claimants, as it has done, with respect to its rights to future production from the wells on the Read tract. With respect to those rights, as distinguished from the plaintiff's claims for past damages, a fund exists for deposit into the court to satisfy the requirements for statutory interpleader. 28 U.S.C.A. § 1335(a)(1). However, such interpleader does not solve the problem of multiple liti-

---

**3.** Those "real rights" that may serve as the basis for personal jurisdiction under La.R.S. § 13:3201(e) are not coextensive with those rights "in property" that confer *in rem* jurisdiction under La.C.Civ.Proc., art. 8. In commenting on Section 3201(e), the Louisiana State Law Institute said in 1964:

[The words "real right" were] included in this subdivision to provide the basis of personal jurisdiction over a nonresident on a cause of action arising from the ownership, use, or possession of a "real right" as defined in Article 3664 of the Louisiana Code of Civil Procedure.

Article 3664 specifies as "real rights" ownership of "a mineral interest in immovable prop-

erty" or of a "mineral royalty" or of "any right under or obligation resulting from a contract to reduce oil, gas, and other minerals to possession." Thus, for purposes of personal jurisdiction under Section 3201(e), it makes no difference whether the plaintiff's claimed mineral right is a "mineral royalty" or simply a claimed "right under . . . a contract to reduce oil, gas, and other minerals to possession." In enacting Section 3201(e), the legislature appears to have overruled *McFeeley v. Hargrove,* La.App.1964, 166 So.2d 333, which held to the contrary under prior law. See also, La.R.S. 31:16, and the Comment following.

gation with respect to the claims for past damages. Nor would an adjudication of the plaintiff's property and contract rights settle the tort question of whether the oil company wrongfully converted the plaintiff's gas.

Another resort would be to entertain all claims to past damages as pendent to the claims in interpleader. Whether this could be done under the current law of pendent jurisdiction is an open question. Simply raising it illustrates the considerable judicial time and energy that resolution of the present dispute would require, if the suit were to proceed in federal court. Among the questions to be faced would be: Under what circumstances is the exercise of pendent jurisdiction proper in interpleader? Can interpleader be used to extend diversity jurisdiction? 13 Wright, Miller and Cooper, Fed.Prac. & Proc. § 3567, at 458–459 (1975). Should the tort and contract claims involved here be deemed to have arisen from the same transaction for purposes of delimiting pendent jurisdiction? The devotion of significant time and effort to resolving novel and complex issues of jurisdictional law would be a waste of federal judicial resources, where the only purpose would be the preservation of federal jurisdiction over a diversity case that could be decided more conveniently and at least as fairly in state court.[4]

In *Hudson v. Newell,* 5th Cir. 1949, 172 F.2d 848, *mod.,* 5th Cir. 1949, 174 F.2d 546, a case cited by the 1966 Advisory Committee on Rules as illustrating the kind of protective measures a court could take to entertain suits under Rule 19(b), the Court of Appeals considered whether the court below should retain jurisdiction over a suit similar to this. The plaintiffs, some but not all of the owners of a tract of land, appear to have leased certain portions of the land to the defendant oil companies without the participation of the other owners. As to these leases, the owners were able to assert independent claims for interpretation and reformation. But, in addition, the plaintiffs sought a declaration as to their mineral rights as owners and lessors, and an accounting of the oil removed from the entire tract. The court held that they were entitled to relief with respect to their fractional interests only, notwithstanding the possibility of multiple litigation, because "a resort might be had by the [defendant] oil companies to some sort of interpleader," 172 F.2d at 852. The court's opinion does not explain the facts in *Hudson* that led it to believe some sort of interpleader was feasible. It is evident with respect this case, however, that no form of interpleader is conveniently available to protect the defendants against the kind of prejudice Rule 19 foresees. Any adequately protective measure the court might undertake would require a tenuous extension of diversity jurisdiction without clear justification.

*Hudson* was decided seventeen years prior to the revision of Rule 19 in 1966. The original rule, drafted in 1937, requires an inquiry as to whether a potential claimant should be deemed "indispensable" to a lawsuit given the nature of his interest or obligations with respect to the claim involved. 3A Moore's Federal Practice ¶ 19.-01 (2d Ed. 1977). The use of the term "indispensable":

> . . . in the context of the original Rule 19 directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, and correspondingly distracted attention from the pragmatic considerations which should be controlling.

Advisory Comm. on Rules Note, Rule 19, Fed.R.Civ.Proc., 28 U.S.C.A. (1966). The rule, as revised in 1966, implicitly recognizes that no third party, regardless of the nature of his interest, is literally indispensable to

---

4. The defendant Vezina has also raised a substantial question as to the proper venue for this action.

the entry of judgment in a lawsuit, and therefore, emphasizes the role of judicial discretion in regulating problems of joinder. *Broussard v. Columbia Gulf Transmission Co.,* 5th Cir. 1968, 398 F.2d 885, 889. If a federal court is to exercise its discretion intelligently in a diversity case, it must be especially mindful of the existence of an alternative forum in state court through which the plaintiff can conveniently pursue his state claims.

The lack of any peculiarly federal interest in this suit would not be grounds for dismissal if the problem of joinder did not exist. And despite the burden diversity jurisdiction increasingly imposes on the time and resources of federal courts, it would be improper to dismiss a suit such as this where jurisdiction is clear. But here it is at best uncertain if all the parties who should be bound by a decision are joined; dismissal will not prejudice the plaintiff, or deprive him of as nearly complete relief as he could obtain in any forum. Thus, the potential drain on the resources of the court that this suit represents may at least be considered as an additional factor to be weighed with the potential prejudice to the defendants if the suit proceeds and the ready alternative available to the plaintiff of a suit in state court.

Consequently, this suit will be DISMISSED for failure to join as parties an absent person whose joinder is regarded as indispensable, Fed.R.Civ.Proc., Rule 19(b), and who could not be joined without divesting the court of jurisdiction.