NATIONAL COAL ASSOCIATION, et al., Plaintiffs,

v.

William CLARK, et al., Defendants.

NATIONAL COAL ASSOCIATION, et al., Plaintiffs,

v.

William CLARK, et al., Defendants.

NORTHERN PLAINS RESOURCE COUNCIL, et al., Plaintiffs,

v.

William CLARK, et al., Defendants.

Civ. A. Nos. 83–2985, 83–3320 and 83–3330.

United States District Court, District of Columbia.

Nov. 28, 1984.

---

Arnold Levy, Jerome H. Simonds, John S. Lopatto, III, Freedman, Levy, Kroll & Simonds, Washington, D.C., for plaintiffs Nat. Coal Ass'n and Mining and Reclamation Council of America; Robert Stauffer, Peter A. Gabauer, Deputy Gen. Counsel, Thomas Altmeyer, Washington, D.C., of counsel.

Robert D. Daniel, Sp. Litigation Counsel, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for federal defendants; John J. McHale, Energy and Resources, U.S. Dept. of the Interior, Washington, D.C., of counsel.

Russell H. Carpenter, Jr., Laird Hart, Covington & Burling, Washington, D.C., for defendants Rocky Mountain Energy Co., Union Pacific Corp., and Union Pacific R. Co.

Steven P. Quarles, Thomas R. Lundquist, Crowell & Moring, Washington, D.C., Stephen H. Foster, Holland & Hart, Billings, Mont., for defendant Meridian Land and Mineral Co.

Guy R. Martin, Perkins, Coie, Stone, Olsen & Williams, Washington, D.C., for de-

fendants Burlington Northern, Inc., and Burlington Northern R. Co.

David Charles Masselli, Washington, D.C., James A. Patten, Patten & Renz, Billings, Mont., Thomas France, National Wildlife Federation, Northern Rockies Natural Resource Center, Missoula, Mont., for plaintiff Northern Plains Resource Council.

## MEMORANDUM ORDER

### HAROLD H. GREENE, District Judge.

These three cases involve challenges to decisions of the Department of the Interior to exchange federal property containing substantial coal reserves for property owned by entities which are subsidiaries of, or otherwise controlled by, major railroads. In No. 83–2985, plaintiffs, which are trade associations representing coal producers, challenge the Department's "Corral Canyon" (Wyoming) exchange with defendant Rocky Mountain Coal Company, a subsidiary of the Union Pacific Railroad. In No. 83–3320 the same plaintiffs challenge the Interior Department's "Circle West" exchange of land in Montana with defendant Meridian Land and Mineral Company, which is owned by defendant Burlington Northern Railroad Company. And in No. 83–3330, the same "Circle West" exchange is challenged by a number of environmental and community organizations.

The major claim asserted by plaintiffs in all three cases—and indeed, the only major common legal claim in these cases—is that the exchanges do not satisfy the "public interest" requirement of the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. § 1716(a), in that they violate policies embodied in other federal statutes which prohibit common carrier railroads from holding federal coal leases or transporting coal that they have themselves mined.[1] Plaintiffs seek declaratory and injunctive relief, including a declaration that the Interior Department's construction of the relevant statute and its approval of the exchanges were contrary to law and invalid.

Plaintiffs have moved to consolidate the cases, primarily on the ground that all three turn on the common FLPMA legal issue. The motion is opposed on the ground that the pending motions by the private defendants in both Nos. 83–3320 and 83–3330 to dismiss for lack of personal jurisdiction and for improper venue,[2] and by the government in No. 83–3320 to dismiss for lack of standing, place the "Circle West" cases in different procedural postures than the "Corral Canyon" case, so that consolidation would neither be fair nor promote judicial economy and efficiency.[3]

The motions to dismiss for lack of personal jurisdiction and improper venue obviously constitute threshold challenges to this Court's appropriateness as a forum for deciding these cases. Accordingly, the Court will consider these issues before considering the other pending motions.[4]

---

1. Specifically, plaintiffs cite a provision of the Mineral Lands Leasing Act of 1920, 30 U.S.C. §§ 181, 202, which prohibits a company operating a common carrier railroad from holding or being given a federal coal lease, and the "commodities clause" of the Interstate Commerce Act, 49 U.S.C. § 10746, which prohibits railroads operating under the jurisdiction of the Interstate Commerce Commission from transporting goods that the railroad has produced or mined.

2. In No. 83–3320, these defendants have moved to dismiss for lack of jurisdiction and improper venue, or in the alternative for transfer to the federal district court for the district of Montana, or for summary judgment. In No. 83–3330, they have filed a similar motion as to jurisdiction and venue, but they have omitted the summary judgment motion.

3. It is also claimed that consolidation is inappropriate because of factual distinctions and differences in legal theories. For example, plaintiffs in No. 83–3330 have also asserted a claim under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., asserting that the environmental impact statement prepared by the Bureau of Land Management was inadequate under NEPA.

4. The other pending motions in these cases include defendants' motions to dismiss for failure to state a claim or for summary judgment in No. 83–2985, the government defendants' motion to dismiss for lack of standing in No. 83–3320, and a cross-motion for summary judgment filed by plaintiffs in the same case.

I

█ In determining whether it possesses personal jurisdiction over the private defendants in the "Circle West" cases, the Court must begin by inquiring whether the contacts of these defendants with the District of Columbia are sufficient to establish personal jurisdiction under District of Columbia law, the source of the Court's power of personal jurisdiction over non-resident defendants. Fed.R.Civ.P. 4(d)(3), 4(e); see *Lott v. Burning Tree Club, Inc.,* 516 F.Supp. 913, 915 (D.D.C.1980); 4 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* Civil §§ 1112–18. It is undisputed that none of these defendants resides, is incorporated, or maintains its principal place of business in the District. Accordingly, the only conceivable bases for the Court's exercise of personal jurisdiction over them are those enumerated in the District of Columbia "long-arm" statute, 4 D.C.Code Ann. § 13–423 (1981 and Supp. 1984).

On the various grounds set forth in the statute for asserting "long arm" jurisdiction over a foreign defendant, the only one potentially applicable here is that set out in subsection (a)(1) of section 423. This subsection permits a court in the District of Columbia to exercise personal jurisdiction over a person, who acts directly or through an agent, as to a claim arising from that person's transaction of business in the District. 4 D.C.Code Ann. § 13–423(a)(1), (b). Plaintiffs here claim that the written and oral contacts of the private defendants with Interior Department officials in the District constitute business transactions sufficient to render defendants amenable to jurisdiction under subsection 423(a)(1).[5] In the view of this Court, that claim fails adequately to take account of the effect of the long-recognized "government contacts" exception to that provision.

█ The government contacts exception exempts from consideration as business transactions upon which section 423(a)(1) "long-arm" jurisdiction may be based contacts of a non-resident defendant in this District which are made solely with the federal government. As the District of Columbia Court of Appeals has explained, two major considerations underlay the development of the "government contacts" exception. First, the court was concerned with protecting the important First Amendment right to petition the national government for the redress of grievances, which arguably would have been impermissibly burdened by a "long-arm" statute that permitted such contacts, standing alone, to subject a non-resident to the jurisdiction of local courts. See *Rose v. Silver,* 394 A.2d 1368, 1373–74 (D.C.1978). Second, the Court of Appeals noted that, absent the government contacts exception, subsection 423(a)(1) would effectively transform the District of Columbia into a national judicial forum whose courts would rapidly be inundated with lawsuits—a result not intended by Congress in enacting the "long-arm" statute. See *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813 (D.C.1976).

Although the articulation and application of the government contacts exception by the local Court of Appeals may have been somewhat inconsistent over the years,[6] the federal Court of Appeals for this Circuit recently concluded upon a careful analysis of the District of Columbia case law both that the government contacts exception remains the law in the District of Columbia and that this exception applies to contacts with all branches of the federal government, not merely to contacts with the Congress.

In *Naartex Consulting Corp. v. Watt,* 722 F.2d 779 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984), the relevant jurisdictional facts of which are strikingly similar to those of the "Circle West" cases, the Court of Ap-

---

**5.** It was the purpose of these contacts to persuade the officials to establish the policy that led to the challenged "Circle West" exchange, and to approve the exchange itself.

**6.** Compare *Environmental Research, supra,* with *Rose v. Silver, supra;* see also *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786–87 (D.C.Cir. 1983).

peals determined that a foreign corporate defendant, whose only contacts with the District consisted of the maintenance of an office used for monitoring legislative and regulatory matters and of several appearances before the Interior Department, lacked sufficient non-governmental, business contacts to be amenable to suit in this District under subsection 423(a)(1). *Id.* at 786–87. And with respect to another issue of relevance here, the court further concluded that the protection of the defendants under the government contacts exception was in no way diminished by the circumstance that their contacts concerned the protection of their own proprietary interests.

■ *Naartex* clearly controls the "Circle West" cases.[7] In these cases, as in *Naartex*, the undisputed affidavits submitted by the private defendants establish that their only contacts with the District of Columbia were the maintenance of a governmental affairs office and limited personal and written communication with Interior Department officials concerning the challenged exchanges. These contacts are insufficient under *Naartex* to satisfy the jurisdictional prerequisites of subsection 423(a)(1), and the Court therefore lacks personal jurisdiction over the private defendants in the "Circle West" exchange cases. These de-

fendants must therefore be dismissed as to those cases.

## II

■ Having concluded that it lacks personal jurisdiction over the private defendants in the "Circle West" cases, the Court must consider next whether these defendants are necessary and indispensable parties within the meaning of Rule 19, Fed. R.Civ.P. It is clear that at least one such defendant—Meridian Land and Mineral Company (Meridian)—is both a necessary and an indispensable party.[8]

Meridian is clearly a necessary party within the meaning of Rule 19(a).[9] Meridian negotiated the challenged land exchange with officials of the Interior Department's Bureau of Land Management, and Meridian obviously has a strong interest in the "Circle West" actions, which call into question both the legality of the exchange and Meridian's title to the land it received as a result of the exchange. It follows that the disposition of these actions in favor of the plaintiffs would impede Meridian's ability to defend its fee interest in the land. Such a disposition could also subject the government to conflicting obligations with respect to the exchanged parcels of land as between a court order invalidating the ex-

---

7. Plaintiffs seek to distinguish *Naartex* and, alternatively, they invite the Court to undertake its own analysis of the relevant District of Columbia Court of Appeals cases. The attempted distinctions of these cases from *Naartex* are entirely convincing. As for the suggestion that this Court should undertake an independent analysis of District of Columbia law, it is obvious that this Court is bound by the recent, carefully reasoned opinion of its own Court of Appeals.

Plaintiffs also argue that the vitality of *Naartex* and the government contacts exception is undermined by recent decisions of the Supreme Court in *Keeton v. Hustler*, — U.S. —, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Calder v. Jones*, — U.S. —, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), which held, *inter alia*, that First Amendment concerns should not affect jurisdictional analysis. This argument also falls short of the mark, however, for it ignores the dual basis for the government contacts exception, which is rooted not only in the First Amendment, but also in the concern that the courts in the District of Columbia not be transformed

into national forums contrary to congressional intent.

8. Because of this determination, the Court need not and does not reach the question whether Burlington Northern, Inc. and Burlington Northern Railroad Company, which have financial interests in Meridian (and indirect financial interests in the outcome of these cases), are also necessary and indispensable parties.

9. That Rule requires the joinder of a party if "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest".

change, and Meridian's potential (due process) claim that, title having passed, it cannot now be disturbed by a judgment in a case to which Meridian was not a party. Finally, as is shown by plaintiffs' joinder of Meridian, they recognize that Meridian's absence would prevent the Court from granting them complete relief and returning matters to the *status quo ante*. All of these considerations compel the conclusion that Meridian is a necessary party under Rule 19(a). See *McKenna v. Udall*, 418 F.2d 1171, 1174 (D.C.Cir.1969).

Similar reasoning compels the conclusion that Meridian is an indispensable party un-

der Rule 19(b).[10]    As explained above, a full, fair, and adequate judgment that does not prejudice the plaintiffs, the government, or Meridian cannot be reached in Meridian's absence.  None of the parties has suggested, nor has the Court itself divined, a satisfactory means by which these problems could be resolved or even mitigated by a careful shaping of any judgment or relief.  Finally, the District Court for the District of Montana constitutes an adequate alternative forum [11] in which Meridian [12] and the other defendants [13] may be joined and the "Circle West" suits be heard.[14]

**10.** That Rule requires a court that has identified a necessary party which is not amenable to process to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed ... The factors to be considered by the Court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder".

**11.** In addition to its jurisdictional adequacy (see n. 12, 13, and 14), the Montana court is clearly an adequate forum for an adjudication on the merits.  That court is, of course, endowed with decision-making authority equal to that enjoyed by this Court and by all other federal courts. Moreover, the Montana court's proximity to the land which is the subject of the "Circle West" suits, and its concomitantly greater familiarity with the substantive issues that will have to be reached if plaintiffs' threshold statutory challenges fail would, if anything, render it more competent than this Court to decide these cases. Finally, since many of the individuals whose actions are challenged in these cases—*e.g.,* the Bureau of Land Management officials and Meridian representatives—reside in Montana, as do the members of plaintiff organizations in No. 83–3330 and some of the members of plaintiff organizations in No. 83–3320, the Montana court would be a convenient forum for the parties in these cases.

**12.** Meridian, a Montana corporation which owns land in Montana, both is found and does business in Montana, and is therefore subject to jurisdiction under Fed.R.Civ.P. 4(d)(3) and 4 Mont.Code Ann.Civ.Proc. Rule 4B, which provides, *inter alia,* that "[a]ll persons found within

the state of Montana are subject to the jurisdiction of the courts of this state".  *Id.*

**13.** The federal defendant can be joined pursuant to 28 U.S.C. § 1391(e), which provides, *inter alia,* that suits against officers of the United States acting in their official capacities may be brought "in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated".  *Id.*  These cases appear to satisfy all three of the cited grounds.  Private defendant Meridian resides in Montana (see n. 12, *supra* ).  The involvement of the local office of the Interior Department's Bureau of Land Management in the development and approval of the land exchange certainly permits Montana to be characterized as the district in which the claims arose.  Finally, the land involved in the exchange is located in Montana.

As for the private defendants, Burlington Northern Railroad Company is qualified to do business in Montana (Defendants' Memorandum in Support of Motion to Dismiss in No. 83–3320 at 14–15 n. 5), and it is therefore found in Montana and amenable to process under the Montana "long-arm" statute, Mont.Code Ann. Civ.Proc. Rule 4B(1).  Burlington Northern, Inc. may also be amenable to suit in Montana; in any event, it has indicated that it would consent to the jurisdiction of the Montana federal district court (Defendants' Memorandum, *supra;* Affidavit of Scott Anderson).  Moreover, even if Burlington Northern were not amenable to suit, its indirect economic interest in the challenged land exchange, coupled with the absence of an available alternative forum in the wake of this Court's decision in these cases, would likely lead the Montana federal court to conclude that Burlington Northern is not an indispensable party in whose absence the suits could not proceed.

**14.** Venue would be proper in the District Court in Montana under 28 U.S.C. §§ 1391(b), (c), and

For the reasons stated, the Court will grant the motions of the private defendants in Nos. 83–3320 and 83–3330 to dismiss these cases pursuant to Rule 19, Fed.R. Civ.P.[15]

### III

Accordingly, it is this 28th day of November, 1984

ORDERED that the motions of private defendants in Nos. 83–3320 and 83–3330 to dismiss be and they are hereby granted, and it is further

ORDERED that *National Coal Association v. Clark*, Civil Action No. 83–3320, and *Northern Plains Resource Council v. Clark*, Civil Action No. 83–3330 be and they are hereby dismissed, and it is further

ORDERED that oral argument will be heard on the pending motion to dismiss or for summary judgment in *National Coal Association v. Clark*, Civil Action No. 83–2985, on January 11, 1985, at 10:00 a.m.

(e). As noted in note 13, *supra,* venue as to the United States is proper under 28 U.S.C. § 1391(e) and will be proper with respect to the entire lawsuit if it is also proper with respect to the other defendants. *Lamont v. Haig,* 590 F.2d 1124, 1129, 1130 n. 36 (D.C.Cir.1978). Under 28 U.S.C. § 1391(b), venue is proper in the district in which the claim arose, and as noted in note 13, *supra,* Montana can reasonably be characterized as the district in which these claims arose. Moreover, if a subsequent lawsuit is brought against all of the present defendants except for Burlington Northern, Inc., venue would be proper under 28 U.S.C. §§ 1391(b) and (c), which provide that venue in cases not founded solely on diversity is proper in the district where all defendants reside and that a corporation's residence for venue purposes is "any district in which it is incorporated or licensed to do business or is doing business" (28 U.S.C. § 1391(c) ); and it might even be proper as to Burlington Northern under the "doing business" provision of § 1391(c).

15. Because the Court has concluded that these cases must be dismissed for lack of jurisdiction over an indispensable party, it does not reach the issues of venue, standing, and appropriateness for consolidation.