Arthur O. FARMER, Appellant,

v.

STATE of Alaska, Bill Weith and Mike Metrokin, individually and in their official capacities as Alaska State Troopers, Appellees.

Nos. S–2890, S–3072.

Supreme Court of Alaska.

March 2, 1990.

Judith K. Bush, William E. Caldwell, Alaska Legal Services Corp., Fairbanks,

Carol H. Daniel, Alaska Legal Services Corp., Anchorage, for appellant.

Raymond Funk, Asst. Atty. Gen., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Arthur Farmer brought suit against the State of Alaska and two State Troopers, Bill Weith and Mike Metrokin, claiming the troopers violated his state and federal constitutional right to be free from unreasonable government seizures, his right not to be deprived of property without due process of law, and his right to enjoy the rewards of his own industry. The trial court granted Metrokin's motion for summary judgment, ruling the claim against Metrokin time-barred. The trial court additionally ruled that Farmer's failure to join a third party defendant merited dismissal of his claim under Civil Rule 19. Farmer appeals, arguing that summary judgment was erroneously granted and that the complaint should not have been dismissed. We agree and, thus, reverse.

## I. FACTS AND PROCEEDINGS

Upstream from the Village of Ruby, on the Yukon River, is 14 Mile Island. Arthur Farmer harvested 43 house logs from this island and rafted them downriver to Ruby on July 9, 1985. Farmer believed he had the right to harvest such timber, but Dineega Corporation (Dineega) disagreed, and claimed title to the logs. Farmer was confronted in Ruby by Don Honea, Dineega's president. Faced with the conflicting claims of Farmer and Honea, two state troopers summoned to the dispute confiscated the logs, tagged them and ordered Honea to have the logs dragged up on the river bank.[1]

Farmer knew the identity of one trooper, Bill Weith, but the name of the other trooper was unknown. Accordingly, Farmer brought suit on July 2, 1987, against the State, Trooper Bill Weith, and "Trooper John Doe, whose name is not known by plaintiff, [but who] was then stationed in Fairbanks." Farmer alleged that the troopers wrongfully interfered in the dispute he was having with Dineega and that their conduct deprived him of his state and federal constitutional rights.[2]

After filing the complaint, Farmer promptly sought the identity of the unknown trooper.[3] On January 11, 1988, after learning that the unknown trooper was Mike Metrokin, Farmer moved to file an

1. The facts underlying this dispute are, for the most part, uncontroverted. As to the possession of the logs, Farmer contends that the troopers turned them over to Honea, and that they were later destroyed. The state asserts that the logs were tagged and set aside until resolution of the dispute within the judicial branch. We express no opinion as to any fact not established at the trial level, and our decision today is grounded only on those facts uncontroverted and necessary to the disposition of this appeal.

2. Among other things, Farmer alleged that he was denied the rewards of his own industry, in violation of Article I, section 1 of the Alaska Constitution:

    This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corre-

    sponding obligations to the people and to the State.

    Farmer also alleged that he was deprived of property without due process of law in violation of the fourteenth amendment to the U.S. Constitution and its state counterpart, article I, section 7 of the Alaska Constitution. Farmer further claimed that the troopers' conduct constituted an unreasonable seizure without a warrant under the fourth amendment to the U.S. Constitution and article I, section 14 of the Alaska Constitution. Farmer also sought a remedy via 42 U.S.C. section 1983.

3. Farmer served interrogatories on the state seeking the true identity of trooper "John Doe." The state complied and, after questioning the various parties involved, and inspecting the log books of the pilot that transported the Fairbanks trooper to Ruby, Farmer determined that Mike Metrokin was the other trooper present. Metrokin's identity was ascertained in December of 1987.

amended complaint. The motion was granted. Metrokin was served with the amended complaint on February 3, 1988. On March 1, Gary Foster, the attorney representing the state entered an appearance on behalf of Metrokin and filed an answer.

After answering the complaint, Metrokin moved for summary judgment, contending that the action against him was time-barred by the two year statute of limitations.[4] On April 20, 1988, the trial court granted Metrokin's motion. The court ruled that Metrokin lacked notice of the suit within a two year period, thus precluding application of the relation back doctrine under Rule 15(c).[5] The trial court further decided that the doctrine of constructive notice was inapplicable under these facts and entered final judgment dismissing Metrokin from the case.

Farmer did not assert a claim against Dineega Corporation. The state, in filing its answer, pled seven affirmative defenses, but it failed to assert the necessity of joining another party. On March 14, 1988, the state filed a motion to compel Farmer to join Dineega as an indispensable party under Civil Rule 19.[6] The state asserted that an issue central to the case, ownership of the logs, required adjudication. Farmer countered, contending that ownership of the logs was not at issue with respect to his claims for police infringement of his constitutional rights. Farmer further argued that the state waived this defense by not asserting that Dineega was a necessary party in its answer.

On April 20, 1988, the trial court granted the state's motion and ordered Farmer to join Dineega as "an indispensable party defendant to this action against the defendants." The court vacated the initial trial date pending Dineega's joinder. Farmer then filed a motion to set a new trial date without first joining Dineega. Farmer argued that Dineega was not an indispensable party within the contemplation of Civil Rule 19(b) and that he had no desire to litigate a claim against Dineega. The court denied Farmer's motion.

In August, Farmer served Dineega with a summons, a copy of the amended complaint and a copy of the court order requiring Farmer to join Dineega. In response, Dineega's counsel wrote to both parties, stating that because Dineega was not named as a party defendant, "Dineega will file no pleading in the referenced matter, and will take no action in that matter." As

---

4. AS 09.10.070 provides:

   No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

5. Civil Rule 15(c) provides:

   Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

6. Civil Rule 19(a) provides:

   A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

a result of Dineega's recalcitrance to join the suit, the state and Weith moved to dismiss Farmer's complaint with prejudice for failure to comply with the court's order compelling joinder of Dineega. Farmer opposed the motion stating that he had, in fact, complied with the court order by serving Dineega with a summons and that "Dineega is therefore before the Court, albeit in the status of a party against whom no claim for relief has been made." On October 13, 1988, the court dismissed Farmer's complaint with prejudice.

After Farmer's complaint was dismissed, the state[7] moved for an award of full attorney's fees of $6,166.80 (later reduced to $6,126.40) on the ground that Farmer's action was frivolous. On November 29, 1988, the court entered its final judgment, awarding the state $4,000 in partial attorney's fees. The court struck the state's proposed finding that Farmer's action was frivolous. Farmer now brings this appeal.

## II. DISCUSSION

A. *The Trial Court Erred in Granting Metrokin's Motion for Summary Judgment*

■ At the outset, we note that the trial court committed plain error in applying the two-year period of limitation expressed in AS 09.10.070. Actions against peace officers are subject to the three-year period of limitation expressed in AS 09.10.060(a). *Jenkins v. Daniels*, 751 P.2d 19 (Alaska 1988). The only one of Farmers' claims governed by the two year statute was his claim under 42 U.S.C. section 1983. *Id.* at 24. The discussion that follows is thus applicable only to Farmer's section 1983 claim, as his other claims were clearly timely.

■ Farmer contends that the trial court erred in granting Metrokin's motion for summary judgment.[8] Farmer posits that under the circumstances of this case, the amended complaint substituting Metrokin for the trooper "John Doe" defendant should relate back to the date of the original complaint. Farmer asserts that the amended complaint should relate back since Metrokin had constructive, or imputed, notice of the action within the limitations period. Conversely, the state argues that under existing federal and state case law, Metrokin must have received actual notice of the suit within the prescribed statutory time-frame.

We note initially that the state has not challenged whether Farmer could properly invoke "John Doe" pleadings under the Alaska Rules of Civil Procedure.[9] Thus, this issue is not before the court. We address only whether the amended complaint in this action properly relates back to the original timely complaint.[10]

---

7. Subsequent to summary judgment in his favor, Metrokin moved for an award of partial attorney's fees in the amount of $1,400. The court, however, held Metrokin's motion in abeyance until resolution of the entire case.

8. We have determined that "[i]n order to be entitled to summary judgment, the moving party must establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Bethel Utilities Corp. v. City of Bethel*, 780 P.2d 1018, 1020 (Alaska 1989) (citing *Wickwire v. McFadden*, 576 P.2d 986, 987 (Alaska 1978)). Whether summary judgment was warranted is a question of law we will review de novo. *Kollodge v. State*, 757 P.2d 1028, 1032 (Alaska 1988). We will review the facts in the light most favorable to the non-moving party. *Id.*

9. In *Van Biene v. ERA Helicopters*, 779 P.2d 315, 323 (Alaska 1989), we declined to address the propriety of "John Doe" pleading. We referred consideration of this issue to the Civil Rules

Committee. We shall also decline to address the issue in the case at bar while deliberation of this issue is pending before the Committee.

10. As one court has observed:
   The only purpose the naming of fictitious defendants could possibly serve is to make it possible to substitute named defendants after the statute of limitations has run. But Rule 15(c), Federal Rules of Civil Procedure, provides the only way in which defendants, not accurately named in a pleading before the limitation period has run, may be accurately named afterwards. That rule, which pertains to the relation back of the pleadings, makes no mention of the pleading of fictitious parties. It is therefore wholly immaterial, insofar as the application of that rule is concerned, whether fictitious defendants were [or are permitted to be] named prior to the running of the statute. *Craig v. United States*, 413 F.2d 854, 856 (9th Cir.), *cert. denied*, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969).

Civil Rule 15(c) governs the application of the relation back doctrine. Federal Rule 15(c) largely parallels the state rule regarding the relation back of amendments, with one critical difference. Unlike the federal rule,[11] the state rule does not contain an express provision allowing mere service on the state's attorneys to serve as sufficient notice for all state agencies or officers for purposes of relation back under Rule 15(c). Although the two rules are largely overlapping, the facts of this case have implicated a situation where the difference between the state and federal civil rule is important. Thus, we may look to federal case law interpreting this rule for guidance in our own application. To the extent that the state rule does not contain the provision allowing mere service on government attorneys to satisfy the notice and prejudice clauses within the rule, federal law is only illustrative and the state provision is not facially dispositive on the question whether the existing language of the rule nonetheless affords relief in this circumstance. We will proceed to examine the language and purpose of the rule to ascertain whether it does.

Before addressing the specific execution of the rule in the case *sub judice*, we must first briefly set forth the mission of the rule.

> Rule 15(c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced. *If the original pleading gives fair notice of the general fact situation out of which the claim arises, the defendant will not be deprived of any protection which the state statute of limitations was designed to afford him.*

3 J. Moore, *supra*, § 15.15[2] at 15–144 to 15–145 (emphasis added, footnote omitted). Thus, the touchstone of the relation back doctrine is fairness; does the substituted or additional party have fair notice of the cause of action, within the prescribed statutory period, such that the party's rights will not be prejudiced? In construing this rule, as with all rules of procedure, we are governed by the "general philosophy of the pleading rules": the rules should be liberally construed to insure that no plaintiff is deprived of his day in court solely because of the intricacies and technical limitations of pleading. Rather, our policy remains that decisions should be rendered on the merits of the case.[12] *See id.* at 15–146;

**11.** Federal Rule of Civil Procedure 15(c) contains an additional paragraph allowing service on the government to relate back to the government, its agencies or its officers. The portion added to the federal rule after adoption of the state rule provides:

> The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

Thus, under the federal rule, mere delivery or mailing of the complaint to the government's attorneys would be sufficient to allow an amended complaint against the government or its agents to relate back. 3 J. Moore, *Moore's Federal Practice* § 15.15[4.–2], at 15–171 (2d ed. 1985).

The purpose of the federal provision allowing service on the government to relate back to its officers and agencies was that "the government was put on notice of the claim within the stated period ... [thus] characterization of the amendment as a new proceeding is not responsive to the reality, but is merely question-begging; and to deny relation back is to defeat unjustly the claimant's opportunity to prove his case." *Id.* at ¶ 15.01[9], at 15–9. Applying that rule in the case at bar, the amended complaint substituting Metrokin, a government officer, for the "John Doe" defendant would relate back at least to the claims against Metrokin in his official capacity. *Cf. Fludd v. United States Secret Service*, 102 F.R.D. 803, 805 n. 4 (D.D.C.1984).

**12.** The Supreme Court reasoned that "[p]leadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938). Similarly, but in another context, Justice Moore reasoned that under certain circumstances the rules of procedure should be "relaxed" for the policy reasons codified in Civil Rule 94; where strict adherence to a rule thwarts justice, the rule may be dispensed with or relaxed. *Kenai*

*Merrill v. Faltin,* 430 P.2d 913, 915 (Alaska 1967) ("the purpose of pleading under our civil rules [is] to facilitate a proper decision on the merits of the controversy"); *see also* Alaska R.Civ.P. 1 ("These rules shall be construed to secure the just, speedy and inexpensive determination of every action and proceeding."); Order Adopting Revised Rules of the Supreme Court of the United States, comments of Justice Black, 346 U.S. 945, 946 (1954) (the "principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts"). Our decision today falls within the ambit of Civil Rule 1 as we enunciate a just interpretation of Civil Rule 15(c).

The crux of the present controversy lies within the notice element of the rule, an element characterized as the "linchpin" of Rule 15(c). *Schiavone v. Fortune,* 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986). We are cognizant of dictum in three prior decisions suggesting a comparatively strict construction of Civil Rule 15(c), and our gratuitous characterization of this construction as "conservative." [13] *McCutcheon v. State,* 746 P.2d 461, 469 n. 16 (Alaska 1987) ("Civil Rule 15(c) requirements are strictly construed"); *Atkins v. DeHavilland Aircraft Co. of Canada,* 699

P.2d 352, 354 (Alaska 1985) (the policy behind statutes of limitation may be better served by "adopting [a] conservative approach"); *Adkins v. Nabors Alaska Drilling,* 609 P.2d 15, 20 (Alaska 1980) (discussing with approval the fact that "federal courts have interpreted the federal analog to Civil Rule 15(c) restrictively when a plaintiff has sought to add a new defendant").

*Atkins* and *Adkins,* however, are distinguishable in the narrow context of this case. The decisions this court relied upon in *Atkins* and *Adkins* were federal cases construing the federal rule.[14] As noted above, the Alaska counterpart to Federal Rule 15(c) does not contain a provision for service upon the government's attorneys as sufficient for an amended pleading to relate back to a government agency and officer. If Alaska had such a provision, Farmer's service on the state attorney general's office would have satisfied the statute and the amended complaint would be valid against Metrokin. Yet, Alaska has no such provision. Hence, without such a broad guarantee of valid service against the government, the policy of strictly interpreting the rule governing amended pleadings loses efficacy.[15]

*McCutcheon* is not applicable to the issues in this case. In *McCutcheon,* the

---

Peninsula Borough v. English Bay Village Corp., 781 P.2d 6, 22–23 (Alaska 1989) (Moore, J., dissenting).

**13.** On the other hand, we have held that Rule 15(c) should be "very liberally" construed to permit amendment even after the statute of limitations has run, absent prejudice to the party opposing the amendment. *Magestro v. State,* 785 P.2d 1211, 1213 (Alaska, 1990) ("we have often reiterated that relation back under Rule 15(c) must be 'very liberally' construed"); *Betz v. Chena Hot Springs Group,* 742 P.2d 1346, 1351 (Alaska 1987); *Estate of Thompson v. Mercedes–Benz, Inc.,* 514 P.2d 1269, 1272–74 (Alaska 1973).

**14.** In *Adkins* we acknowledged that "the *federal courts* have interpreted" federal rule 15(c) restrictively. *Adkins,* 609 P.2d at 20 (emphasis added). The *Adkins* court proceeded to cite federal case law exclusively. *Id.* at 20–21 & n. 9 (citing *Craig v. United States* 413 F.2d 854, 858 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969)); *Archuleta v. Duffy's, Inc.,* 471 F.2d 33 (10th Cir.1973); *Francis v. Pan American Trinidad Oil,* 392 F.Supp. 1252

(D.Del.1975); *Stephens v. Balkamp, Inc.,* 70 F.R.D. 49 (E.D.Tenn.1975); *Slack v. Treadway Inn of Lake Harmony,* 388 F.Supp. 15 (M.D.Pa. 1974).

It was also noted in *Adkins* that the restrictive interpretation of Rule 15(c) was criticized as being too literal by professors Wright and Miller. *Id.* at 21 n. 9 (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1498, at 510 (1971 and Supp.1979).

In *Atkins,* this court relied upon two federal cases setting forth a strict interpretation of federal rule 15(c). *Atkins,* 699 P.2d at 354 (citing *Norton v. International Harvester,* 627 F.2d 18 (7th Cir.1980) and *Gutierrez v. Raymond International,* 86 F.R.D. 684 (S.D.Tex.1980)).

**15.** We further note that any strict interpretation of the rules of procedure is suspect as contrary to Civil Rule 1 and in contravention of our general policy of broadly construing the rules in order to adjudicate disputes on their merits. To the extent that *Atkins* and *Adkins* indicated differently, we retreat from that portion of the opinions, but otherwise we cast no doubt on our reasoning in both opinions.

plaintiff *knew* the defendant's identity, but merely neglected to add that defendant to his original complaint. Here, Farmer had no knowledge of the true identity of his intended defendant. McCutcheon did not utilize a "John Doe" pleading; rather McCutcheon had actual knowledge of the defendant's true identity. Our discussion in Footnote 18 of *McCutcheon* was premised on the fact that, where the identity of a defendant is known, the relation back doctrine and the imputed notice doctrine are extremely limited, if applicable at all. This is clearly not the case here.

In *Schiavone*, the U.S. Supreme Court was confronted with a case similar in procedural posture to the one now before us. In *Schiavone*, the "complaint[ ] as originally drawn [was] filed within the limitations period; ... and ... the amendment of the complaint[ ], and the service of the complaint[ ] as so amended ... necessarily took place after the expiration of the limitations period." *Id.*, 477 U.S. at 25, 106 S.Ct. at 2382. The Court restated the requirements of the relation back doctrine thusly:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 29, 106 S.Ct. at 2384.

█ No dispute exists as to the first factor; clearly the claim against Metrokin

arose out of the conduct set forth in the original pleading. The question before the court is whether Metrokin received notice within the limitations period and will not be prejudiced in maintaining his defense. We hold that Metrokin had imputed notice via his attorney and we adopt the identity of interest theory as to service on the state, its agency and officers as stated below.

There is a developing body of law that allows notice under Civil Rule 15(c) to be given constructively where the additional party brought in by amendment is represented by the same attorney as the existing parties. *See, e.g., Kirk v. Cronvich,* 629 F.2d 404, 407–08 (5th Cir.1980); *Morrison v. Lefevre,* 592 F.Supp. 1052, 1057–58 (S.D.N.Y.1984); *Florence v. Krasucki,* 533 F.Supp. 1047, 1054 (W.D.N.Y.1982); *Taliferro v. Costello,* 467 F.Supp. 33, 35–36 (E.D.Pa.1979); *Ames v. Vavreck,* 356 F.Supp. 931, 942 (D.Minn.1973). The doctrine of imputed notice, under the identity of interest rubric, is especially compelling in suits similar to Farmer's, wherein a citizen is seeking redress against the government and its agents.[16]

The identity of interest standard usually requires a nexus between the new and the old parties as to the subject of the litigation and an analogous legal position within the case itself. *See* 3 J. Moore, *supra,* § 15.15[4.–1] at 15–160 n. 12. Where the new and the old party share the same attorney, imputed notice can readily be found and the dictates of Civil Rule 15(c) are nonetheless adhered to. Where a new party (1) has constructive notice, imputed through the same attorney retained by existing parties to the action, (2) through no fault of the plaintiff the defendant's true

---

**16.** This position is not unanimous. One court reasoned that "it is irrelevant whether the new party had constructive notice that the suit would have been brought against him." *Bruce v. Smith,* 581 F.Supp. 902, 906 (W.D.Va.1984) (citing *Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir.1980)). We disagree.

Other courts have expressly relied upon the doctrine of constructive notice when construing Civil Rule 15(c). *See, e.g., Berndt v. Tennessee,* 796 F.2d 879, 884 (6th Cir.1986) ("We believe that Rule 15(c) does not require that the new

defendants received actual notice. It is enough that the new defendants received constructive notice of the suit.") (citations omitted); *Williams v. Ward,* 553 F.Supp. 1024, 1026 (W.D.N.Y.1983) ("notice to the defendant does not have to be formal. It is sufficient if it puts defendant on actual or constructive [notice] that there may be a claim against him.... Knowledge can be imputed to a new defendant through his attorney who also represented the party or parties originally sued.").

identity was unknown at the time of pleading, and (3) the new party defendant is not prejudiced by the amended complaint, Civil Rule 15(c) should not stand as a technical bar. To construe it so is to put form over substance, and leads the courts down the well worn path of the past, returning to the theory that the practice of law is more a "sporting chance" than an arbiter of disputes. *See generally Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

■ We hold that Metrokin may be charged with constructive notice of the suit within the two year statute of limitations period.[17] Constructive notice may be imputed to Metrokin through his counsel, the state attorney general's office, which represented all of the defendants from the outset. Farmer put the state on notice within the requisite time frame that he also had a cause of action against a then unidentifiable trooper stationed in Fairbanks and that as soon as the trooper's true identity was learned, he intended to amend the complaint. Metrokin has neither alleged nor can he show any prejudice. Thus, it was error for the trial court to grant the motion for summary judgment.

### B. *The Trial Court Erred by Ruling Dineega an Indispensable Party*

■ The state moved for an order compelling Dineega to be joined as a "person needed for just adjudication" under Civil Rule 19(a) and the trial court granted the motion. Farmer claims this was an abuse of discretion in that Civil Rule 19 was inapplicable under these facts. The state, on the other hand, maintains that the underlying issue, ownership of the logs, has to be adjudicated before measuring the conduct of the officers because if it is determined that Dineega owned the logs, then Farmer *a priori* had no property interest impinged. We reject this argument and rule that the court abused its discretion in ordering joinder of Dineega.

---

**17.** In this appeal we have not been asked to decide whether the state constitution gives rise to an implied right of action, *see Robison v. Francis*, 777 P.2d 202, 204 (Alaska 1989); *Vest v.*

We review the trial court's dismissal of Farmer's complaint pursuant to Alaska Rule of Civil Procedure 41(b) under an abuse of discretion standard. *See Dome Laboratories v. Farrell*, 599 P.2d 152, 156 (Alaska 1979) (court applied abuse of discretion standard in reviewing a trial court's dismissal under Civil Rule 41(a)(2)); *see also* 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* § 41.12, at 41–157 (2d ed. 1986) (district court's ruling on motion to dismiss under Fed.R.Civ.P. 41(b) for failure to comply with a court order can be overturned on appeal only by a showing of an abuse of discretion).

At issue is the construction of the term "indispensable." Determination of indispensability involves a discretionary balancing of interests. *State, Dep't of Highways v. Crosby*, 410 P.2d 724, 725 (Alaska 1966); *see also B.B.P. Corp. v. Carroll*, 760 P.2d 519, 524–25 (Alaska 1988). On the one hand, consideration must be given to the dangers involved in rendering a judgment in the absence of all parties interested in the litigation. *Crosby*, 410 P.2d at 725. On the other hand, weight must be given to the desirability of making "meaningful determinations if at all possible" and "the desirability of having some adjudication ... rather than none." *Id.* at 725–26.

Farmer has filed claims against the state and two troopers alleging impermissible infractions of his state and federal constitutional rights. What cause of action exists against Dineega? Farmer could, for instance, assert a claim for trover or conversion; but these are claims unrelated to the civil rights action. More importantly, Farmer simply did not want to sue Dineega, and Dineega was certain that it wanted no part of the suit and informed the court it had absolutely no interest in the litigation. The state may not assert that Dineega's interests are threatened when Dineega has expressly disavowed any interest in the litigation. *See, e.g., Padgett v. Theus*, 484 P.2d 697, 703–05 (Alaska 1971) (interpret-

---

*Schafer*, 757 P.2d 588, 598 & nn. 39, 40 (Alaska 1988), and we express no opinion on this question.

ing former Civil Rule 19, the court held that a party is estopped from raising an indispensable party issue where the absent party, "with full knowledge of the scope and potential impact of [the] litigation upon his interests, chose not to intervene as a party"); *see also Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1044 (9th Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983) (the government was not a necessary or indispensable party in a contract dispute where the government's assessment of its own interests indicated it considered the action between the parties a "private dispute" and "meticulously observed a neutral and disinterested posture"). Civil Rule 19 is not a tool for compelling a plaintiff to bring suit against one he has no desire to sue when the additional party is not essential to the litigation.

> It amounts to a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable and who are not essential for just adjudication in order to be able to assert against them claims that are foreign and unrelated to the claims asserted in the pleadings and on a separate cause of action entirely.

*La Chemise Lacoste v. General Mills, Inc.,* 53 F.R.D. 596, 601 (D.Del.1971), *aff'd,* 487 F.2d 312 (3d Cir.1973); *accord, Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982).

The state argues that determining ownership of the logs is essential to the proper resolution of the issue whether the troopers acted unconstitutionally. In support of its argument, the state contends Dineega's property interests will be prejudiced by adjudication of the issue in Dineega's absence. The state primarily relies on *National Coal Ass'n v. Clark,* 603 F.Supp. 668 (D.D.C.1984) and *Read v. Phillips Petroleum,* 441 F.Supp. 1184 (E.D.La.1977). We find these cases unpersuasive. The subject of the litigation in these cases was a determination of specific property ownership interests. The parties considered indispensable in *National Coal* and *Read*

asserted ownership claims regarding the property in dispute. *See, e.g., National Coal,* 603 F.Supp. at 672–73; *Read,* 441 F.Supp. at 1186. Thus, in light of the fact that Dineega asserts no claim of ownership in the present case, these cases lend no support.

The state further contends that ownership of the logs must be ascertained in order to determine whether Farmer was deprived of property without due process. Yet, the U.S. Supreme Court has held that "[t]he Fourteenth Amendment's protection of 'property,' ... has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest.' " *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). In addition, we will construe property rights and due process considerations under the Alaska Constitution, article I, section 7, expansively. *Shagloak v. State,* 597 P.2d 142, 144 n. 14 (Alaska 1979); *Frontier Saloon v. Alcoholic Beverage Control Bd.,* 524 P.2d 657, 659 (Alaska 1974). It is, of course, true that Farmer's right to relief on his due process claims will depend in part upon whether he possessed a property interest in the logs. It is not necessary to join Dineega as a *party,* however, in order to make such a determination. The state has not established any reason why Dineega could not be subpoenaed as a witness should the issue of ownership be important to a determination whether the troopers acted constitutionally.

That Farmer's claim turns on whether he in fact had an ownership or possessory interest in the logs is clear. We hold that the trial court erred, however, in compelling joinder of Dineega as a party. Whether Farmer in fact has an interest, is, of course, to be determined by the trier of fact. We further decide that, given the nature of the allegations against the state, a meaningful adjudication on the merits is desirable. We hold [18] that the trial court abused its discretion in ordering joinder of

---

**18.** Farmer also contends that the state waived its claim that Dineega was a necessary party when it failed to raise the issue in its answer to

the complaint. We need not address this point on appeal in light of our disposition of the issue.

Dineega and consequently dismissing the complaint with prejudice.[19]

The rulings of the trial court are REVERSED and VACATED.

---

**19.** As a result of our decision we vacate the award of attorney's fees to the state and remand for further findings consistent with this decision.