**Carol H. PULITZER–POLSTER, Plaintiff-Appellant,**

v.

**Samuel C. PULITZER, Defendant-Appellee.**

No. 85–3145.

United States Court of Appeals, Fifth Circuit.

March 21, 1986.

As Amended May 23, 1986.

David Stone, Randall A. Smith, Denise M. Pilie, New Orleans, La., for plaintiff-appellant.

Jack M. Weiss, Mary Louise Strong, Bronfin, Heller, Steinberg & Berins, Fred Bronfin, Polack, Rosenberg, Rittenberg & Endon, Leon H. Rittenberg, Jr., New Orleans, La., for defendant-appellee.

Before BROWN, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This is the case of the family tie that came untied. Carol Pulitzer-Polster seeks damages from her uncle Samuel C. Pulitzer, because of his alleged improprieties when acting as the sole voting trustee of Wembley Industries, Inc., the world's largest manufacturer of men's neckwear. Before this suit was filed in federal court, Carol, her mother and her sister had brought suit in Louisiana state court arising out of the same dispute. The federal district court dismissed the suit under Rule 19 because of Carol's failure to join her mother and sister as indispensable parties. To have joined the mother and sister would have defeated the diversity jurisdiction of the federal court. The question is whether the district court abused its discretion in

dismissing the suit, rather than allowing it to proceed in the absence of these parties.

## I

Samuel Pulitzer and his brother Emmanuel Pulitzer founded the predecessor of Wembley Industries in 1925. Emmanuel was the father of Carol Pulitzer-Polster and Susan Pulitzer, and the husband of Lillian Pulitzer, now Lillian Pulitzer Smith.

In 1964, Samuel and Emmanuel Pulitzer created a voting trust into which they put 100 percent of the voting stock of Wembley Industries. The voting trust made Samuel and Emmanuel co-trustees and provided that the survivor would become the sole trustee. In 1967 Emmanuel Pulitzer died, and, pursuant to the voting trust, Samuel Pulitzer succeeded to twenty-five percent of the voting stock of Wembley Industries, and Carol succeeded to twelve-and-one-half percent of the voting stock. Susan became the beneficiary of a trust that held twelve-and-one-half percent of the voting stock. The trustees were Samuel, Lillian and Carol.

Samuel was the sole voting trustee from 1967 until 1984, when the voting trust expired by its own terms. The basis of the dispute is the accusation that during the period between 1967 and 1984 Samuel mismanaged the corporation and illegally attempted to exclude Emmanuel's widow and daughters from its benefits, allegedly in order to benefit his own children, and to acquire Lillian's, Susan's and Carol's stock at a low price. In 1980, Carol, Lillian, and Susan brought an action in Louisiana state court against Samuel and his two sons, Sydney and Arthur, who were also shareholders, directors and officers of Wembley, and two other directors and officers of Wembley. They did not present the claim to Wembley before filing suit. The action sought to overturn the voting trust, require an accounting, require the defendants to restore allegedly wrongly paid monies and declare employment contracts between Wembley and the defendants null and void. The action also sought attorney's fees and other costs. The petition alleges that the plaintiffs sue both individually and derivatively on behalf of Wembley.

The petition in the state case alleges that the defendants violated their fiduciary duties to the plaintiffs in their capacities as directors and officers, and also that Samuel violated "a further and special duty" in his capacity as the trustee of the voting trust. The petition also alleges that Samuel caused the corporation to award to himself and his sons employment contracts that were not in the corporation's best interests because they paid too much for too long to unsuccessful management.

While the first action was languishing in the state court, Carol filed this action in federal court against Samuel. Carol sought damages for Samuel's alleged breaches of fiduciary duty under the voting trust agreement. Carol did not join Lillian and Susan. For purposes of this appeal, despite the parties' dispute on the question, we shall assume that Carol is a citizen of California as she claims. Samuel is a citizen of Louisiana. Lillian is a citizen of Louisiana. Because Susan's sole interest is as a beneficiary of another active trust, the citizenship of the trustees controls, and two of them, Samuel and Lillian, are citizens of Louisiana. It is undisputed, therefore, that joinder of Lillian and Susan would destroy diversity jurisdiction.

The district court dismissed Carol's action because Carol had not joined Lillian and Susan. The district court stated that one of the purposes of Rule 19 of the Federal Rules of Civil Procedure was the avoidance of multiple litigation, and that both the federal and state lawsuits seemed to be seeking the same objectives.

## II

Carol argues that the district court abused its discretion in dismissing her case under Rule 19. According to Carol, Susan and Lillian are not necessary or indispensable parties to her federal cause of action under Rule 19(a) because complete relief can be afforded in the federal action without Lillian and Susan, since the federal action seeks only damages for Carol. For

the same reason, Carol maintains, her federal suit will not impede Lillian or Susan in pursuing their state court remedies, nor will it expose Samuel to the risk of inconsistent obligations. Carol also argues that, even if the state and federal suits are similar, similarity is irrelevant under Rule 19, which is concerned with protecting absent parties, not eliminating multiple litigation.

Samuel insists that the cases are not only similar, but are in many respects identical. This close similarity is relevant because it illuminates the factors that are denoted in Rule 19. Samuel places great stress on the practical consequences of permitting the federal suit to go forward, pointing to the many possible procedural and substantive difficulties that will result if two judgments, one by the federal and one by the state court, are rendered. Finally, he contends that the plaintiff will not be prejudiced by the dismissal of this case, since the state suit is available for addressing all the wrongs she alleges in her federal suit.

### III

The ultimate question in this appeal is whether the district court abused its discretion when it dismissed the federal suit for failure to join indispensable parties. In addressing this question, we must consider each of the several factors listed in Rule 19. We must decide whether, in the absence of Lillian and Susan, complete relief can be afforded to Carol. We must decide whether Lillian and Susan claim an interest relating to the subject of the federal action,

and whether they are so situated that a decision in their absence might impair or impede their ability to protect this interest, or whether the defendant, Samuel Pulitzer, might be exposed to a substantial risk of multiple or inconsistent obligations by reason of Lillian's and Susan's unrepresented interests if this case were allowed to proceed.

If consideration of these factors leads us to the conclusion that Lillian and Susan are persons who should be joined, then we reach the next level of inquiry, whether the district court abused its discretion in dismissing the action. We turn to Rule 19(b) and consider the factors enumerated there and the interests the Rule protects. We consider the prejudice to the absent persons, whether relief can be shaped to avoid prejudice to absent persons, the interest in obtaining an adequate judgment that achieves a complete resolution of the dispute between the parties, and the adequacy of the plaintiff's other remedies if the action is dismissed for nonjoinder.

### IV

The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of. Fed.R.Civ.P. 19 advisory committee note. In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder.[1] In circumstances where

---

1. Rule 19 reads as follows:

   **Joinder of persons Needed for Just Adjudication**

   **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or oth-

   erwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

   **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

the litigation should not proceed without absent persons, the federal suit should be dismissed.

■■■ The 1966 amendments to Rule 19 militate in favor of a highly practical, fact-based decision.[2] This emphasis constitutes a clear break from the often technical pre-1966 rulings under Rule 19 that commonly relied on fine, legal distinctions between types of interest, distinctions that were not concerned with the question whether all the parties in interest had been joined. The new emphasis on pragmatism meant that courts could now freely consider various harms that the parties and absentees might suffer. Rule 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be. Consequently, a district court's decision to dismiss for failure to join an indispensable party is properly reviewed under an abuse-of-discretion standard. *Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 889 (5th Cir.1968). Furthermore, when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder. *Boles v. Greeneville Housing Authority*, 468 F.2d

476, 478 (6th Cir.1972) (Tuttle, J., sitting by designation).

Rule 19 provides a two-step analysis for deciding whether to dismiss an action for failure to join an absent party, the issue presented by this case. First, Rule 19(a) provides a framework for deciding whether a given person should be joined. Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined.

Following this analysis, therefore, we first consider whether Lillian and Susan are persons who should be joined under Rule 19(a). If we decide that Lillian and Susan are persons to be joined, then we must proceed to Rule 19(b) and decide whether the action should be allowed to go forward in their absence, because to join them will eliminate the diversity jurisdiction of the federal court.

Rule 19(a)(1) states that a person is to be joined if "in his absence complete relief cannot be accorded among those already parties." Since Carol's federal suit seeks only damages for herself, the absence of Lillian and Susan should not prevent the court from awarding Carol money damages. Lillian and Susan would therefore not need to be joined on this basis.[3]

---

The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be inadequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**2.** The original Rule 19(a) and (b) read as follows:

Rule 19. Necessary Joinder of Parties.

(a) Necessary Joinder. Subject to the provisions of Rule 23, and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

(b) Effect of Failure to Join. When persons who are not indispensable, but who

ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such person[s] parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance, or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it, but the judgment rendered therein does not affect the rights or liabilities of absent persons.

**3.** This determination assumes that Carol's federal suit can be properly brought as an individual suit, rather than as a derivative suit. This assumption is at least subject to argument. Referring to the alleged breach of the voting trust, the state court said:

Lillian and Susan could still be persons to be joined, however, if one of them "claims an interest relating to the subject of the action and is so situated that the disposition of the action in her absence may (i) as a practical matter impair or impede her ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of her claimed interest." Fed.R.Civ.P. 19(a)(2).

Even though there does not seem to be much dispute between the parties about whether Lillian and Susan claim an interest relating to the subject of the action, it is nevertheless useful to more precisely identify the nature of their interests. Lillian owns 25% of the outstanding voting stock of Wembley. Susan is the beneficial owner of 12½% of the voting stock of Wembley through a trust which has as its trustees Lillian, Carol, and Samuel. Lillian and Susan are also the owners, outright and in trust, of approximately 32% of the nonvoting shares of Wembley. Moreover, like Carol, since their stock was held in the voting trust, they are both affected by Samuel's conduct as voting trustee.

■ Despite the apparent agreement that Lillian and Susan "claim an interest" relating to the subject of the federal suit, Carol and Samuel sharply disagree over whether disposition of the federal suit without joining them would "as a practical matter impair or impede [their] ability to protect that interest." Fed.R.Civ.P. 19(a)(2)(i). Carol argues that the federal suit is carefully phrased to seek damages only for herself as the beneficiary of the voting trust, and therefore the federal court's decision without Lillian and Susan would not

affect any individual or derivative rights that they may have. According to Carol, this federal action will not adversely affect any state action involving Lillian and Susan because they are not parties to this federal action and because collateral estoppel is not recognized in Louisiana courts. Samuel, recognizing the limited applicability of res judicata and collateral estoppel in Louisiana, nevertheless argues that the federal suit might create precedent that the Louisiana court would recognize as a practical matter. According to Samuel, therefore, a negative result in the federal suit might harm Lillian and Susan's efforts in any state suit.[1]

The case law under Rule 19 has recognized that the establishment of a negative precedent can provide the requisite prejudice to the absentee. *Read v. Phillips Petroleum Co.*, 441 F.Supp. 1184, 1186 (E.D.La.,1977) (Rubin, J., sitting by designation). Although the Louisiana state court would not have to recognize any federal ruling, as a practical matter the state court would undoubtedly consider and possibly respect any such federal ruling.

The possibility of a precedent-setting effect of the federal judgment would be unimportant, however, if the state and federal suits were so different that any federal precedent established would be inapplicable to the state suit. The state suit, however, contains an allegation that, in addition to his duties as an officer, Samuel owed the plaintiffs a further and special duty as a result of his status as the voting trustee. This allegation is identical to the substance of the federal action. Furthermore, all of Samuel's actions were implemented through the power, acquired as trustee, to vote 100% of the stock. This power al-

---

To the extent that these alleged actions may have damaged the plaintiffs, their damage would only be incidental to the damage suffered by the corporation and by all stockholders generally. Such incidental damage to a stockholder, regardless of the label placed on the claim, does not convert a derivative claim into one that the value of his stock has been diminished.

The federal court must follow Louisiana law in this diversity suit. The state suit is now on appeal.

4. Notwithstanding the argument of the parties, federal standards, not state standards, determine the *res judicata* and collateral estoppel effect of a federal judgment. *Southern Pacific Transportation Co. v. Smith Material Corp.*, 616 F.2d 111, 115 (5th Cir.1980) (collateral estoppel); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.1975) (*res judicata*).

lowed him to elect directors, to appoint officers and to control the actions of the corporation. A ruling by the federal district court that Samuel had not breached his fiduciary duty to Carol as voting trustee could easily prejudice Lillian and Susan in the state suit where they seek relief, directly and indirectly, for the same breach.

Carol's response to this apparent similarity is twofold. First, she argues that the similarity of suits is irrelevant to the purposes of Rule 19 because Rule 19 concerns the impact of the failure to join persons, not the judicial system's interest in avoiding duplicative litigation. Carol argues that, if Carol were the sole stockholder of Wembley, she could still have filed similar suits in state and federal court without posing any Rule 19 problems because there would be no absentees. Her argument correctly states that in such a situation there would be no Rule 19 problem, and it is probably true that similarity, in isolation, is never sufficient to raise such problems. The similarity of suits becomes a Rule 19 concern because it may inform and implicate the interests that Rule 19 seeks to protect. Rule 19 seeks to protect absentees and, as we shall see, Lillian and Susan may be harmed by not being joined, because, in part, of the similarity of the state and federal suits. Consequently, the similarity of the state and federal suits is a relevant consideration when viewed in this context.

Second, Carol argues that the suits are not really similar and therefore that Lillian and Susan will not be prejudiced by their absence from the federal suit. Carol characterizes the state suit as strictly a derivative suit that does not seek damages for the individual parties. From the papers of the state suit that we have before us, it is not at all obvious that this characterization is correct. The petition states that Lillian Pulitzer-Smith "brings this action individually and in her representative capacity as testamentary trustee for her daughter Susan C. Pulitzer, and as a derivative or secondary action on behalf of Wembley Industries, Inc." A similar allegation is made for Carol. Of course, the relief sought by

the state plaintiffs seems to be mainly directed toward the corporation, involving accounting, injunctions, etc. The individual harm that Carol, Lillian and Susan allege in the state suit may not be sufficiently separate from the harm suffered as stockholders to state an individual, rather than a derivative, claim. *Moity v. Acadian Woodworks, Inc.*, 435 So.2d 597 (La.App.1983). *Cf. Junker v. Crory*, 650 F.2d 1349 (5th Cir.1981); *Wilson v. H.J. Wilson Co.*, 430 So.2d 1227, 1234 (La.App.1983). Indeed, the state court has so held here. *See* note 3. Nevertheless, even if the state suit was purely a derivative suit while the federal suit was purely an individual action, there are very similar *issues* in the two suits. A determination in the federal suit that Samuel did not violate his fiduciary duty to Carol through the voting trust because of the way he managed the corporation would obviously influence the state court's determination whether Samuel violated his fiduciary duty to the corporation by taking the very same acts. Practically speaking, the same witnesses will come to the witness stand and say much the same things in the two lawsuits. No doubt, credibility findings will be important, and the state court may respect prior findings by the federal court. Rule 19 allows us to recognize the fact that Lillian and Susan may be harmed by the federal court's resolution of these issues in their absence, and we so hold.

While this holding is enough to establish that under Rule 19(a) Lillian and Susan are persons to be joined if feasible, it is useful for our later analysis to also consider whether Rule 19(a)(2)(ii) is satisfied; that is, whether Lillian's and Susan's absence may subject Samuel to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the absentee's] claimed interest." This subsection has been the source of some considerable dispute between the parties. Samuel attempts to characterize the subsection as requiring only multiple litigation, rather than multiple obligations. Carol, on the other hand, has contended that the word "obligation" should be read to mean that only a result that would obligate some iden-

tifiable *res*, typically real estate, is properly considered under the subsection. Neither one of these descriptions of the subsection is correct. While "obligations" cannot be equated with "litigation," the word "obligations" is not limited to circumstances that may require two inconsistent dispositions of the same *res*. Instead, the subsection is intended to prevent "a double or otherwise inconsistent liability." Fed.R. Civ.P. 19 advisory committee note.

Viewed practically, there is a substantial risk that Samuel might face double liability as a result of this lawsuit. Samuel may, if the federal litigation is allowed to proceed, be forced to pay twice for the same alleged misconduct causing the same harm. Except for one claim in the federal suit,[5] all Carol's individual harms stem from her stock ownership. If, therefore, the state court allows recovery in the derivative action, Carol will receive the benefit of damages awarded the corporation and, if the federal suit is allowed to proceed, Carol may be awarded damages individually for the same harm already compensated by the derivative recovery. In such an event, Samuel will be liable for both judgments.

We therefore hold that Lillian and Susan are persons to be joined if feasible under Rule 19(a).

### B.

Once we have determined that Lillian and Susan are persons to be joined if feasible and that their joinder would destroy diversity jurisdiction, we must, using Rule 19(b), "determine whether in equity and good conscience the action should proceed

among the parties before [us], or should be dismissed, the absent person[s] being thus regarded as indispensable." Thus, we must assess the factors set out in Rule 19(b), seeking to avoid manifest injustice while taking full cognizance of the practicalities involved.

In *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–38, 19 L.Ed.2d 936 (1968), the Supreme Court has stated that the factors enumerated in Rule 19(b)[6] may be delineated as the interests that affect four categories of persons: the plaintiff, the defendant, the absentees and the public. First to be considered is the plaintiff's interest in a federal forum, second, the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another," third, the absentees' interest in avoiding prejudice from the proceeding, and fourth, the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. *Id.*

Analyzing these interests in this case, Carol's interest in the federal forum is weak. Relief in the state courts is available to her. The state courts are as convenient to her and her witnesses as the federal court, and the federal court has no special expertise in the subject of her suit. Her case in federal court is in the nascent stages, and certainly she has no judgment in federal court to protect. *Cf. Provident Tradesmen's Bank*, 390 U.S. at 110, 88 S.Ct. at 738. On the other hand, the case has been in litigation in state court for five years.[7]

---

**5.** One of Carol's claims seems clearly individual. Carol seeks personal damages for her termination as an employee of Wembley.

**6.** The factors are:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**7.** Any argument that the dismissal of the state suit precludes the state remedy and thus justifies this federal suit is gainsaid by the fact that this is a diversity suit. The state suit includes the same claim that Carol is making in the federal suit, that is, a personal claim for Samuel's violation of his fiduciary duty as voting trustee. As we have noted in footnote 3, the state trial court has held that this claim is simply part of a derivative action under Louisiana law. The case is now on appeal. To sum up, Carol has no greater remedy in the federal forum than in the state forum.

Samuel's interest in avoiding multiple litigation or inconsistent relief is quite clear. The likelihood of inconsistent liability has already been discussed above.[8] Samuel also has an interest in avoiding multiple and repetitive litigation that we must weigh in the balance. *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir.1970) (defendant has right to be safe from needless multiple litigation). Carol's suit infringes on this interest. Indeed, there seems little reason for the federal suit except the fact that the state suit is moving very, very slowly through the Louisiana courts. We have previously noted that the similarity of lawsuits is important where similarity affects the interests implicated by Rule 19.

Rule 19 does not, of course, give Samuel an unconditional right to be free from similar litigation, and neither does our holding today. The very nature of the intensely factual inquiry called for by Rule 19 precludes establishment of any bright-line rule. Instead, we merely hold that in the circumstances of this case, Samuel's interest in being free from multiple litigation deserves some weight in our evaluation of the Rule 19 interests to be protected.

The absentees' interest does not require much further elaboration because we have already discussed it in the context of Rule 19(a). As we have already said, Lillian and Susan might be prejudiced by a negative precedent.

Rule 19 also considers the public's interest in efficient dispute resolution. The presence of multiple litigation and its attendant burdens on the parties and the court system should also be considered. This case is almost a paradigm of needless multiple litigation, since no one contends that there is any special reason that the suit must be brought in federal court other than the inordinate delay the plaintiffs apparently suffered in attempting to move the case through the state courts. All the parties and witnesses will be available in state court. There is no barrier to any of the parties' claims that does not exist in federal court. The measure of relief is the same. Finally, we note that the parties have been litigating in state court for five years and that conversely the parties have very little time invested in the federal suit at this point. The public's interest therefore supports the district court's determination that the suit should be dismissed.

Thus, after a full consideration of all the factors enumerated in Rule 19 as explicated by *Provident Tradesmen's Bank*, we find that the district court did not abuse its discretion when it dismissed Carol's suit for failure to join Lillian and Susan as indispensable parties.

## V.

For the reasons stated in this opinion, the judgment of the district court is

AFFIRMED.

---

**8.** While Samuel has drawn to our attention many other possibly inconsistent obligations that might result from allowing the federal action to proceed, we do not need to examine each of those to decide this case.