# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2009

Charles R. Fulbruge III
Clerk

No. 08-60152

JIM HOOD, Attorney General, ex rel; STATE OF MISSISSIPPI, Acting for
Itself and Parens Patriae for and on behalf of the People of the State of
Mississippi

Plaintiffs-Appellants

v.

THE CITY OF MEMPHIS, TENNESSEE; MEMPHIS LIGHT GAS & WATER
DIVISION

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this lawsuit, the state of Mississippi seeks damages from the City of
Memphis and Memphis Light, Gas and Water ("MLGW") (collectively,
"Memphis"), for the alleged conversion of groundwater in the Memphis Sands
Aquifer (the "Aquifer"). The district court dismissed Mississippi's lawsuit
without prejudice, holding that Tennessee is an indispensable party to the suit
and that the court was without power to join Tennessee. We AFFIRM.

# I. BACKGROUND

The Aquifer is located beneath portions of Tennessee, Mississippi, and Arkansas. There is no interstate compact governing use of the Aquifer's water, and thus no specific volumes of groundwater from the Aquifer have been apportioned to Mississippi, Tennessee, or Arkansas. The Aquifer is the primary water source for both DeSoto County, Mississippi, and the city of Memphis, Tennessee, which lies just across the state line from DeSoto County. Mississippi seeks past and future damages, as well as equitable relief, related to Memphis's allegedly wrongful appropriation of groundwater from the Aquifer.[1] Mississippi alleges that part of the groundwater that Memphis pumps from the Aquifer is Mississippi's sovereign property and that the state must therefore be compensated.

MLGW, a division of the City of Memphis, owns and operates one of the largest artesian water systems in the world. It is responsible for providing gas, electricity, and water to its residential, business, governmental, and other customers, who are primarily citizens of Memphis. Although three of its groundwater well fields are located near the Tennessee border, all of MLGW's wells are located within Tennessee, and Memphis and Tennessee contend that this municipal water program operates under the direction and control of Tennessee law.[2]

---

[1] Although there was some dispute between the parties below as to the basis of jurisdiction, federal question jurisdiction is present both because 28 U.S.C. § 1331(a) includes suits brought by a state and because federal common law will apply to the dispute. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 99 (1972).

[2] *See, e.g.,* TENN. CODE ANN. § 68-221-707 (Tennessee Department of Environment and Conservation exercises supervision over operation of public water systems, including features of operation that affect quantity of water supplied). Mississippi contends that Memphis's

Mississippi asserts that MLGW's groundwater pumping has created an underground "cone of depression" centered under Memphis and extending into Mississippi. Mississippi states that this cone of depression causes groundwater that would otherwise lie beneath Mississippi to flow across the border and into the cone under Tennessee, and thus become available to be pumped by Memphis. Mississippi argues that due to the growth of Memphis's water system the Aquifer is being drawn down at a higher rate than it is being replenished, thus causing water levels to drop.

Mississippi filed its first complaint against Memphis in February 2005. Memphis filed a motion to dismiss on several bases, including that the state of Tennessee was an indispensable party pursuant to Federal Rule of Civil Procedure 19. The motion to dismiss was denied in August 2005. Memphis then moved to "amend" the district court's order or to certify an interlocutory appeal. Construing the motion to amend as a motion for rehearing, the district court denied both motions in September 2005. Memphis filed an answer and subsequent amended answer. Mississippi filed an amended complaint in October 2006, eliminating certain claims and clarifying its request for an award of monetary damages for Memphis's alleged misappropriation of Mississippi's groundwater.

In June 2007, Memphis moved for judgment on the pleadings, again arguing that Tennessee was an indispensable party to the suit. Memphis also moved for partial summary judgment on several of Mississippi's claims. In September 2007, the court denied the motions.

---

groundwater pumping is not controlled by Tennessee law, but cites no legal authority for that conclusion, and neither does it address the provisions of Tennessee law cited in Memphis's brief.

In late January 2008, shortly before the bench trial was to start, the district court announced that it had decided *sua sponte* to revisit the issue of Tennessee's possible status as an indispensable party and thus the court's subject-matter jurisdiction. After briefing from the parties and oral argument, the district court dismissed the suit for failure to include Tennessee, an indispensable party.[3] Mississippi appeals.

## II. DISCUSSION

### A. Standard of Review

We review the district court's decision to dismiss for failure to join an indispensable party for an abuse of discretion. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438-39 (5th Cir. 2003). Determining whether an entity is an indispensable party is a highly-practical, fact-based endeavor, and "[Federal Rule of Civil Procedure] 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 2006). However, "[a] court abuses its discretion when its ruling is based on an erroneous view of the law." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995).

Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry. First the district court must determine whether the party should be added under the requirements of Rule 19(a). Rule

---

[3] In its opinion dismissing this suit, the district court directed that the Arkansas Attorney General should be put on notice of the pendency of this action and any future action filed in the U.S. Supreme Court, although the court refrained from determining whether Arkansas is also an indispensable party.

19(a)(1) requires that a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster*, 784 F.2d at 1309.

If the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *HS Res.*, 327 F.3d at 439. The factors that the district court is to consider in making this determination are laid out in Rule 19(b):

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by; (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

5

Mississippi contends that the district court misapplied Rule 19 in holding that Tennessee is a necessary and indispensable party because its suit does not implicate any sovereign interest of Tennessee. Mississippi argues that its suit does not require an equitable apportionment of the Aquifer because the state owns the groundwater resources of the state as a self-evident attribute of statehood, and thus there is no interstate water to be equitably apportioned. Mississippi further argues that it is not seeking relief for damages caused by the direct actions of Tennessee, and therefore the suit is not an action between states invoking the original jurisdiction of the Supreme Court.

Memphis responds that the district court correctly determined that the nature of Mississippi's claims and asserted ownership of a water resource that it shares with Tennessee makes Tennessee an indispensable party to suit. Memphis argues that because Tennessee's sovereign ownership rights in the Aquifer water, the same which Mississippi seeks to protect, are implicated, the case cannot be properly resolved without Tennessee's participation. Memphis points to a century of Supreme Court case law addressing the equitable apportionment of interstate waters among states to argue that the district court correctly held that joining Tennessee would create a suit between states that must be filed in the Supreme Court.[4]

### B. Tennessee is a Necessary Party to this Water Ownership Dispute

---

[4] Tennessee, participating in this appeal as *amicus curiae*, asserts that it has a sovereign interest in its share of Aquifer water as great as that asserted by Mississippi, and it therefore is a necessary and indispensable party to any suit over Memphis's withdrawals from the Aquifer.

The district court held that Tennessee was a necessary party under Rule 19(a)(1) because in its absence complete relief could not be accorded between Memphis and Mississippi. The court explained that it could not determine whether Memphis had misappropriated water from the Aquifer without determining *what portion* of the Aquifer belongs to Mississippi and Tennessee respectively, and thus an equitable apportionment of the Aquifer between the states was required. In so holding, the district court rejected Mississippi's argument, renewed on appeal, that only Mississippi's water is at issue. Mississippi's fundamental argument as to why Tennessee's presence in the lawsuit is unnecessary is that the Aquifer's water is not an interstate resource subject to equitable apportionment, and therefore Tennessee's sovereign interests are not implicated by the suit.

We find that the district court made no error of law as to the necessity of equitably apportioning the Aquifer. The Aquifer is an interstate water source, and the amount of water to which each state is entitled from a disputed interstate water source must be allocated before one state may sue an entity for invading its share. *See Hinterlander v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 104-05 (1938). Allocation of an interstate water source is accomplished through a compact approved by Congress or an equitable apportionment. *Id.*

"Equitable apportionment is the doctrine of federal common law that governs disputes between states concerning their rights to use the water of an interstate stream." *Colorado v. New Mexico*, 459 U.S. 176, 183 (1982). The Supreme Court has described the applicability of this doctrine in broad terms:

> [W]henever . . . the action of one state reaches, through the agency of natural laws, into the territory of another state, the question of

7

the extent and the limitations of the rights of the two states becomes a matter of justiciable dispute between them, and this court is called upon to settle that dispute in such a way as will recognize the equal rights of both and at the same time establish justice between them.

*Kansas v. Colorado*, 206 U.S. 46, 97-98 (1907). Determining Mississippi and Tennessee's relative rights to the Aquifer brings this case squarely within the original development and application of the equitable apportionment doctrine. The fact that this particular water source is located underground, as opposed to resting above ground as a lake, is of no analytical significance. The Aquifer flows, if slowly, under several states, and it is indistinguishable from a lake bordered by multiple states or from a river bordering several states depending upon it for water. *See, e.g., Nebraska v. Wyoming*, 515 U.S. 1 (1995) (allocation of North Platte River); *Wisconsin v. Illinois*, 449 U.S. 48, 50 (1980) (amending order allocating usage of portions of Lake Michigan).[5]

Mississippi argues that it owns a fixed portion of the Aquifer because it controls the resources within its state boundaries, citing to Mississippi and federal law demonstrating the state's sovereign rights over the soil, forest, minerals, etc. Despite Mississippi's contentions, it is clear that the Aquifer is not a fixed resource like a mineral seam, but instead migrates across state

---

[5] A handful of Supreme Court cases mention aquifers in the context of interstate water disputes. *See Texas v. New Mexico*, 462 U.S. 554, 556-57, n.1, 2 (1983) (discussing role of New Mexico aquifers feeding the Pecos River, subject of litigation, and possible detrimental effects of pumping); *Wisconsin*, 449 U.S. at 50 (court order amending prior decree with requirements including "to the extent practicable allocations to new users of Lake Michigan water shall be made with the goal of reducing withdrawals from the Cambrian-Ordovician aquifer"). While these opinions do not address aquifer allocation directly, the fact that the aquifers were not treated differently from any other part of the interstate water supply subject to litigation supports the conclusion that the Aquifer at issue must be apportioned.

boundaries. The Supreme Court has consistently rejected the argument advanced by different states, and advanced by Mississippi in this lawsuit, that state boundaries determine the amount of water to which each state is entitled from an interstate water source.[6] *See, e.g.*, *Hinterlander*, 304 U.S. at 102 (Colorado's contention that it "rightfully may divert and use . . . the waters flowing within her boundaries in this interstate stream . . . cannot be maintained. The river throughout its course in both states is but a single stream, wherein each state has an interest which should be respected by the other," quoting *Wyoming v. Colorado*, 259 U.S. 419, 466 (1922)).

The Aquifer must be allocated like other interstate water resources in which different states have competing sovereign interests, and whose allotment is subject to interstate compact or equitable allocation. Therefore, we find no error in the district court's conclusion that Tennessee's presence in the lawsuit was necessary to accord complete relief to Mississippi and Memphis. *See Pulitzer-Polster*, 784 F.2d at 1309.

## C. Tennessee's Joinder Would Destroy Subject-Matter Jurisdiction

After finding Tennessee to be a necessary party, the district court held that it was without power to join the state because original and exclusive jurisdiction over a suit between Mississippi and Tennessee would reside in the United States Supreme Court. *See* 28 U.S.C. § 1251(a) ("The Supreme Court

---

[6] Notably, the equitable apportionment doctrine has been used to address other migratory interstate resources, including the apportionment of fish that make an interstate migration. *See Idaho v. Oregon*, 462 U.S. 1017, 1024 (1983) ("Although that doctrine has its roots in water rights litigation, the natural resource of [migratory salmon] is sufficiently similar to make equitable apportionment an appropriate mechanism for resolving allocative disputes.").

shall have original and exclusive jurisdiction of all controversies between two or more States."). Mississippi argues that even if Tennessee's presence in the suit is necessary, it does not invoke the Supreme Court's original jurisdiction, and the district court could therefore retain jurisdiction over the case. We disagree.

Mississippi argues that the district court has subject-matter jurisdiction because this suit is only against Memphis, not Tennessee, and would at most be subject to the Supreme Court's original but non-exclusive jurisdiction. *See* 28 U.S.C. § 1251(b)(3) ("The Supreme Court shall have original but not exclusive jurisdiction of . . . All actions or proceedings by a State against the citizens of another State."). The Supreme Court has in the past stated a preference that such suits be brought in the district court in the first instance. *See United States v. Nevada*, 412 U.S. 534, 538 (1973). Mississippi's argument that its suit is not against Tennessee hangs on the assertion that only Memphis's actions, and not Tennessee's, are at issue. *See Milwaukee*, 406 U.S. at 97 (holding that where Illinois sued Milwaukee for polluting Lake Michigan, not mandatory to sue Wisconsin as well). However, that contention ignores that, in contrast to *Milwaukee*, this suit requires an allocation of water rights between states: Memphis's actions are not wrongful unless there is a defined allocation of water that it is allowed to pump. Tennessee is a necessary party under Rule 19(a) on that basis, and the suit is thus one between two states.

Mississippi correctly argues that a suit involving interstate water does not *automatically* invoke the jurisdiction of the Supreme Court and strip the district court of jurisdiction. However, the cases to which Mississippi analogizes are distinguishable. Four cases upon which Mississippi relies most heavily are suits against the U.S. Army Corps of Engineers ("Corps of Engineers"), not against other states, and therefore plainly not within the scope of 28 U.S.C. § 1251(a).

10

*See Alabama v. U.S. Army Corps of Eng's*, 424 F.3d 1117, 1130 (11th Cir. 2005) ("*Alabama II*") (recognizing that Alabama's suit against the Corps of Engineers was not a dispute between states, despite intervention of other states as parties, because the litigation was over how the Corps of Engineers should fulfill its obligations under federal law); *Georgia v. U.S. Army Corps of Eng's*, 302 F.3d 1242, 1254-55 (11th Cir. 2002) (same); *Alabama v. U.S. Army Corps of Eng's*, 382 F. Supp. 2d 1301, 1309-12 (N.D. Ala. 2005) ("*Alabama I*") (same); *also South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025-26 (8th Cir. 2003) (same).

Mississippi also relies heavily on *Milwaukee v. Illinois*, the case that the district court identified as the basis for its earlier rulings denying Memphis's arguments that Tennessee is an indispensable party. 406 U.S. 91 (1972). *Milwaukee* is distinguishable. *Milwaukee* involved a federal common law nuisance action to stop alleged pollution of Lake Michigan by the city of Milwaukee's sewage disposal practices. The Supreme Court denied Illinois's motion for leave to file a bill of complaint against Wisconsin, holding that the action did not trigger the Supreme Court's exclusive jurisdiction. The Court found that, under appropriate pleadings, Wisconsin could be joined as a defendant, but that it was not a mandatory defendant on the facts of the case. *Id.* at 97. The Court concluded that the case fell under 28 U.S.C. § 1251(b)(3), giving the Supreme Court original but not exclusive jurisdiction over certain actions, and therefore Illinois could and should file suit in the appropriate federal district court. *Id.* at 108.

Mississippi argues that *Milwaukee* is a more analogous case than the water-allocation cases because Mississippi, like Illinois, merely seeks to enjoin the actions of the city of Memphis and does not have any claim against

11

Tennessee as a state. Mississippi's argument fails, however, because of the crucial factual difference between the two cases: *Milwaukee* involved stopping the pollution of what was agreed to be an interstate water body, while Mississippi claims sole ownership of a portion of the interstate water at issue. Mississippi's suit necessarily asserts control over a portion of the interstate resource Memphis currently utilizes pursuant to Tennessee law. *See, e.g.,* TENN. CODE ANN. § 68-221-707(a)-(b) ("The [Tennessee Department of Environment and Conservation] shall exercise general supervision over the operation and maintenance of public water systems throughout the state. . . . [including] all the features of operation and maintenance which do or may affect the quality or quantity of the water supplied."). Tennessee's water rights are clearly implicated, even if Mississippi has sued only Memphis. *Cf. Colorado v. Kansas*, 320 U.S. at 393 (noting that controversy between states over rightful shares of the Arkansas River "is not to be determined as if it were one between two private riparian proprietors or appropriators"); *Kansas v. Colorado*, 206 U.S. at 100 (noting the court must consider the effect that one state's increased share of water has on another state in order to determine amount of water each is entitled to from river).

Tennessee cannot be joined to this suit without depriving the district court of subject-matter jurisdiction because a suit between Mississippi and Tennessee for equitable apportionment of the Aquifer implicates the exclusive jurisdiction of the Supreme Court under 28 U.S.C. § 1251(a).

## D. There Was No Abuse of Discretion in Dismissing the Suit

Having concluded that Tennessee is a necessary party whose joinder would deprive the district court of subject-matter jurisdiction, we turn to whether the

12

district court abused its discretion in dismissing the suit under Rule 19(b). When assessing the Rule 19(b) factors, the relevant inquiry is "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b); *see Pulitzer-Polster*, 784 F.2d at 1312 ("[W]e must assess the factors set out in Rule 19(b), seeking to avoid manifest injustice while taking full cognizance of the practicalities involved.").

We find no abuse of discretion in the district court's determination that Tennessee is an indispensable party and that in equity and good conscience the suit should be dismissed. Clearly a judgment rendered in Tennessee's absence would be enormously prejudicial to Tennessee's sovereign interest in its water rights. The specter of a determination of Tennessee's water rights without the its participation in the suit is itself sufficiently prejudicial to render the state an indispensable party. *Cf. Hinterlider*, 304 U.S. at 106-07 (noting that judicial apportionment of water from an interstate stream is binding on all water claimants from each state); *New Jersey v. New York*, 283 U.S. 336, 346 (1931) ("[A river] offers a necessity of life that must be rationed among those that have power over it. . . . Both States have real and substantial interests in the River that must be reconciled as best they may."). Further, there was no error in the district court's finding that it could not fashion restrictions in the judgment so as to avoid the threat of prejudice to Tennessee's sovereign interests or that a judgment rendered without Tennessee's participation would be inadequate. *Cf. Idaho v. Oregon*, 462 U.S. 1017, 1025 (1983) ("[W]henever . . . the action of one State reaches through the agency of natural laws into the territory of another State, the question of the extent and the limitations of the rights of the two States becomes a matter of justiciable dispute between them. . . ."); *Colorado v. Kansas*, 320 U.S. at 392 ("The reason for judicial caution in adjudicating the

13

relative rights of states [to shares of interstate water] is that . . . they involve the interests of quasi-sovereigns, [and] present complicated and delicate questions. . . .").

Finally, Mississippi will have an adequate remedy despite this suit's dismissal. *See* 28 U.S.C. § 1251(a). In an equitable apportionment action, the Supreme Court might take one of several actions, such as concluding that the existing withdrawals of groundwater from the Aquifer in Tennessee are appropriate or limiting the total volume of Aquifer water that may be withdrawn by either party. *See Colorado v. Kansas*, 320 U.S. at 391; *New Jersey*, 283 U.S. at 346.[7]

### III. CONCLUSION

For the foregoing reasons we AFFIRM the judgment of the district court.

---

[7] Of course, the parties might also negotiate an interstate compact allocating the resource going forward rather than continue litigation. *See Colorado v. Kansas*, 320 U.S. at 392 (encouraging the parties to seek a negotiated, political solution rather than requiring the Supreme Court to make a necessarily imperfect determination).