**DELIVERANCE POKER, LLC, Plaintiff,**

v.

**TILTWARE, LLC and Michael Mizrachi, Defendants.**

**No. 10–CV–664–JRN.**

United States District Court, W.D. Texas, Austin Division.

March 21, 2011.

Douglas M. Becker, John Jacks, Richard Edwin Gray, III, Gray & Becker, Austin, TX, for Plaintiff.

Aimee G. Lane, Ian J. Imrich, The Law Office of Ian J. Imrich, Los Angeles, CA, George Belfield, Jordan Grotzinger, Randall Adam Swick, Paul R. Bessette, Greenberg Traurig, LLP, Austin, TX, John Paul Henry, The Law Offices of John Henry, PC, Round Rock, TX, for Defendants.

### ORDER

JAMES R. NOWLIN, District Judge.

Before the Court in the above-entitled and styled cause of action is Defendant Tiltware, LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Clerk's Dkt. # 61); Plaintiff Deliverance Poker, LLC's Response in Opposition to Tiltware's Motion (Clerk's Dkt. # 66); Tiltware's Reply to Deliverance's Response (Clerk's Dkt. # 74); the Court's Order requiring supplemental filings (Clerk's Dkt. # 76); and the Parties' supplements in compliance with the Court's Order (Clerk's Dkt. # 77, 78, 79). After thorough review, the Court finds that (1) the plaintiff fails to carry its burden of proving complete diversity with regard to Tiltware; (2) Michael Mizrachi destroys diversity jurisdiction and must be dismissed from this action; (3) Michael Mizrachi is a "Required Party" under Fed. R.Civ.P. 19(a); and (4) the factors under Fed.R.Civ.P. 19(b) weigh in favor of dismissing Tiltware, LLC. For these reasons this case is **DISMISSED WITHOUT PREJUDICE.**

### Facts [1]

There are three main characters in this drama. Plaintiff Deliverance Poker, LLC;

---

[1] These facts are taken from the plaintiffs Third Amended Complaint (Clerk's Dkt. # 48).

Defendant Michael Mizrachi or "the Grinder" as he is called; and Defendant Tiltware Poker, LLC. Deliverance Poker, LLC is Carlos Benavides III's dream of an online poker company that became a reality (on paper at least) when he caused the company to be organized under the laws of Texas. At the outset of his venture, Mr. Benavides realized two things. First, he needed to raise several million dollars to get his website going. Second, he needed a famous poker name to help garner street credibility. Who better than the Grinder?

Mr. Benavides was introduced to the Grinder in Las Vegas. After discussing Deliverance Poker and the opportunities that lay therein, both Parties signed a "Promotional Representation Agreement" on July 13, 2009. The benefit for the Grinder was $150,000 in cash and the conveyance of a 1.75% membership interest in Deliverance Poker, LLC. The benefit for Deliverance Poker was the brand promotion created by the company's exclusive sponsorship rights over the Grinder.

After the contract was executed, Deliverance was on a hot streak, making deals with venture capitalists and getting its website ready for launch. Meanwhile, the Grinder was on a hot streak of his own, jet setting across the globe, finishing at the top of several major poker tournaments, and promoting Deliverance Poker along the way. At this point, the relationship between Mr. Benavides and the Grinder was steady, and Deliverance Poker appeared to have a bright future on the horizon.

That bright future was eclipsed in July 2010. During this time, the Grinder was competing in the Main Event of the World Series of Poker. While grinding his way through the competition, the Grinder suddenly stopped wearing Deliverance Poker's shirts, hats, etc. Behind this hiccup was Defendant Tiltware, LLC. Tiltware was interested in using the Grinder to promote its online poker website, Full Tilt Poker, and made the Grinder an offer he couldn't refuse.

As the tournament progressed, the Grinder informed Mr. Benavides about his plans to represent Full Tilt Poker and cease sporting the Deliverance Poker gear that he had previously agreed to wear exclusively. Mr. Benavides objected and referred the Grinder to the binding sponsorship contract that they had entered. In spite of these objections, the Grinder went all in with Tiltware and permanently ended his representation of Deliverance Poker. Because of the Grinder's defection, Deliverance Poker's marketing strategy collapsed, its investors fled, its website crumbled, and Mr. Benavides's dream was dashed. As expected, this lawsuit was filed shortly thereafter.

Deliverance Poker first appeared on the federal docket in a rush for injunctive relief. The Court denied the plaintiff's two *ex parte* TRO motions, both seeking to prevent the Grinder from wearing Full Tilt Poker paraphernalia. When reviewing the plaintiff's motions, the Court was primarily concerned with whether the contract between Deliverance and the Grinder had come into effect.

The problem was, and still is, in spite of the *quid pro quo*, and the signature of both Mr. Benavides and the Grinder, the contract between them is not necessarily binding. By its own terms, the contract becomes "effective immediately upon the closing by Deliverance of an offering of debt or equity interests in Deliverance which raises no less than One Million Dollars (the 'Effective Date')." (Clerk's Dkt. # 8, Ex. B). There is also a subsequent provision indicating that "[t]his Agreement will automatically terminate if the Effective Date has not occurred on or before August 24, 2009". (Clerk's Dkt. # 8, Ex. B). The fact questions stemming from

these provisions were sufficient to deny the plaintiff's requests for a TRO. Fittingly, both the Grinder and Tiltware base their defenses on the assertion that the contract at issue never became effective.

There is no question that the contract between Deliverance Poker and the Grinder is at the heart of this lawsuit. All of the plaintiff's causes of action against the Grinder involve theories of contract or quasi-contract, and its causes of action against Tiltware involve tortious interference with that same contract. Because of this lawsuit's simplicity, the Court ensured the case a short tenure by scheduling the final pretrial conference four months after the scheduling order was due. (Clerk's Dkt. # 30). Now, after this lawsuit's brief but rocky journey, Tiltware's recently hired counsel pointed out an elephant in the room: the Court does not have proper subject matter jurisdiction to hear this case. As a result, this case is dismissed without prejudice.[2]

### Analysis

Two separate lines of reasoning support the Court's decision to dismiss this case without prejudice. First, the plaintiff has failed to carry his burden of proving complete diversity of citizenship. Second, the plaintiff's pleadings necessarily destroy the Court's diversity jurisdiction between Deliverance Poker and the Grinder. Furthermore, because of the Grinder's central role in the lawsuit, Rule 19(a) renders him a "Required Party", and the factors under Rule 19(b) counsel for dismissal of Tiltware. The Court proceeds first with its most simple reason for dismissing the case.

### I. The Plaintiff Fails to Properly Plead Complete Diversity

The plaintiff's Third Amended Complaint recites an incorrect standard for determining the citizenship of a LLC, so its case should be dismissed. A LLC's citizenship is comprised of each member's citizenship.[3] The burden of establishing complete diversity rests with the plaintiff.[4] This burden requires the plaintiff to specifically allege each party's citizenship.[5] And failure to satisfy this requirement mandates dismissal.[6] Rather than identifying the citizenship of all members of the two LLCs in this case, Deliverance and Tiltware, the plaintiff discusses these companies' principal places of business and states of organization. At this late hour, even with the supplemental briefing the parties have filed, the members of Tiltware have not been accounted for. As a result, the plaintiff has not carried the required burden, warranting dismissal of Tiltware.[7]

---

2. The rules of subject matter jurisdiction should be familiar. They are as old as they are simple. "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." See *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch 267, 2 L.Ed. 435 (1806); *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir.2004)).

3. *Harvey*, 542 F.3d at 1080.

4. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1259 (5th Cir.1988); *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir.1975).

5. *McGovern*, 511 F.2d at 654 (quoting 2A Moore's Federal Practice ¶ 8.10, at 1662); *see also Powell v. Abney*, 83 F.R.D. 482, 487 (S.D.Tex.1979).

6. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804–05 (5th Cir.1991); *Patterson v. Patterson*, 808 F.2d 357, 357 (5th Cir.1986); *McGovern*, 511 F.2d at 654.

7. The documents included in the plaintiff's supplemental briefing leaves ambiguous the question as to whether the Grinder is a member of Deliverance or only a membership interest owner. But the Court will not belabor this point. Either way, the Grinder should be dismissed for destroying diversity jurisdiction.

Dismissal for the above reasons would not necessarily preclude Deliverance from refiling against Tiltware in federal court. It is a dismissal predicated on form (failure to properly plead) rather than substance (actual lack of complete diversity). But here, based on the known facts, this case is truly beyond the Court's power to hear, making state court the proper forum. This leads into the Court's second reason for dismissing this case.

## II. The Grinder's Membership Interest in Deliverance Poker Destroys Complete Diversity

 In light of Supreme Court precedent, this Court finds it prudent to hold that the citizenship of individuals who own a LLC, i.e., the people with a membership interest in a LLC, must be included when determining a LLC's citizenship, regardless of whether those individuals are members.[8] The Grinder, according to the plaintiff's Third Amended Complaint, owns a 1.75% membership interest in Deliverance Poker. The Grinder is a citizen of Florida, so for the purposes of diversity jurisdiction, Deliverance is also a citizen of Florida. As a result, complete diversity is lacking, and dismissal of the Grinder is required.

This Court's holding steps beyond the express bounds identified by the Fifth Circuit. Presently, the Circuit has held only that a LLC's citizenship is comprised of the citizenship of all of its members.[9] There is a dearth of binding authority as to whether the citizenship of individuals who are not members of a LLC, yet still own a membership interest in that LLC, should be included when determining the LLC's citizenship. But four U.S. Supreme Court decisions regarding diversity jurisdiction and the citizenship of unincorporated organizations are informative.[10]

One hundred and fifty years ago the Supreme Court created a rule of citizenship that made it easier for corporations to invoke diversity jurisdiction.[11] It allowed both a corporation and its shareholders to be considered citizens of the state of incorporation rather than requiring the citizenship of each shareholder to determine the corporation's citizenship;[12] then its gener-

---

8. Tiltware's recently hired counsel filed a motion to dismiss for lack of subject matter jurisdiction because of the Grinder's 1.75% membership interest in Deliverance Poker. After Tiltware filed its 12(h)(3) motion to dismiss, the plaintiff initially conceded that the Grinder's membership interest in Deliverance Poker destroyed the Court's diversity jurisdiction. (Clerk's Dkt. # 66). But the Court was skeptical as to whether the citizenship of a person with a membership interest should dictate the citizenship of a LLC in the same way as a member. Because of this skepticism, the Court issued an Order stating that a membership interest alone was insufficient to destroy diversity jurisdiction, and required further briefing as to whether the Grinder was a member of Deliverance or only the owner of a membership interest. In its supplemental briefing, Tiltware cited several cases to support its argument that the citizenship of a membership interest owner should be included when determining the citizenship of a LLC. After thoroughly reviewing the case law cited by Tiltware, the Court is convinced that its initial inclination was incorrect.

9. Harvey, 542 F.3d at 1080.

10. See C.T. Carden v. Arkoma Assocs., 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); United Steelworkers of America v. R.H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); Chapman v. Barney, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889).

11. See Louisville, C. & C. R.R. Co. v. Letson, 2 How. 497, 558, 11 L.Ed. 353 (1844); Marshall v. Baltimore & Ohio R.R. Co., 16 How. 314, 329, 14 L.Ed. 953 (1854); see also Carden, 494 U.S. at 188, 110 S.Ct. 1015 (noting the reversal in treatment of corporations); Bouligny, 382 U.S. at 148, 86 S.Ct. 272 (same).

12. See id.

osity dried up. From that point forward, the Supreme Court changed course, and has consistently held that the rule regarding citizenship of corporations "must not be extended[ ]"[13] to other business entities.

Since *Marshall v. Baltimore & Ohio Railroad Co.*, 16 How. 314, 14 L.Ed. 953 (1854), the citizenship of no other type of business organization has been construed to make diversity jurisdiction more readily available.[14] Instead, on four separate occasions, when faced with a choice of rules, the Supreme Court has picked the rule of citizenship that makes diversity jurisdiction more difficult for business entities to obtain. In brief, when considering (1) a joint-stock company, citizenship was based on its members rather than its state of organization;[15] (2) a limited partnership association, citizenship was based on "the several persons composing such association"[16] rather than its state of organization;[17] (3) a labor union, citizenship was based on union members rather than its principal place of business;[18] and (4) a limited partnership, citizenship was based on every partner—limited and general—rather than only general partners.[19] Again, in all of these cases, the Court could easily have chosen a rule allowing for greater access to federal courts on diversity grounds—but it didn't. Instead, it construed citizenship in a manner that makes obtaining diversity jurisdiction more difficult.

This line of cases has been criticized because the numerous business entities under review were treated in a significantly different manner from corporations despite minimal practical differences.[20] The Supreme Court has acknowledged its critics and admits that its decisions can "validly be characterized as ... unresponsive to policy considerations raised by the changing realities of business organization." Indeed, the Court has systematically used a blunt instrument to carve out the individuals whose citizenship should comprise a business entity. That is, the Court has included the citizenship of "the several persons composing" an organization without regard to their level of control or involvement in the affairs of the company.[21]

But the Court's response to these criticisms has remained the same: it is the job of Congress, not federal courts, to weigh the merits of extending diversity jurisdiction to the numerous business entities now available.[22] Justice Scalia hammered this

13. *Great Southern Fire Co.*, 177 U.S. at 457, 20 S.Ct. 690.

14. *Carden*, 494 U.S. at 189, 110 S.Ct. 1015 ("While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have (with an exception to be discussed presently) just as firmly resisted extending that the treatment to other entities.")

15. *See Chapman*, 129 U.S. at 681, 9 S.Ct. 426.

16. *Great Southern Fire Co.*, 177 U.S. at 456, 20 S.Ct. 690.

17. *See id.* at 451–57, 20 S.Ct. 690.

18. *See Bouligny*, 382 U.S. at 147–52, 86 S.Ct. 272.

19. *See Carden*, 494 U.S. at 195–96, 110 S.Ct. 1015.

20. *See Carden*, 494 U.S. at 195–96, 110 S.Ct. 1015; *Bouligny*, 382 U.S. at 149–151, 86 S.Ct. 272.

21. *See Carden*, 494 U.S. at 194–98, 110 S.Ct. 1015.

22. *See id.* at 196–97, 110 S.Ct. 1015; *Bouligny*, 382 U.S. at 150–51, 86 S.Ct. 272 ("[P]leas for extension of diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts.").

point home in *C.T. Carden v. Arkoma Associates:* [23]

> Thus, the course we take today does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives. Such accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word "citizen." The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision. [24]

Ultimately, if Congress wishes to make diversity jurisdiction more readily available to GPs, LPs, LLCs, LLLPs, or any other type of business entity that can be formed under state law, it can do so. But the Supreme Court has made clear that federal courts should simply make an effort to identify "the several persons composing" [25] an organization and include their states of citizenship when determining the citizenship of the organization as a whole.

In the instant case, this Court is just swimming with the current. The Grinder owns a small percentage of Deliverance Poker. Because of this ownership, it makes sense to say he is one of "the several persons composing" the organization. As such, his citizenship should be taken into account when determining the citizenship of Deliverance Poker as a whole. This holding follows the Supreme Court's direction of adopting rules for citizenship that limit the availability of diversity jurisdiction to an unincorporated entity.

This Court's holding also comports with the Supreme Court's refusal to closely examine the particulars of the individuals who comprise a business organization. [26] Again, when determining citizenship for various business entities, the Supreme Court pointed to union members without regard to their position in the union; [27] partners without regard to their degree of control; [28] and most notably "the several persons composing [a partnership associa-

---

**23.** 494 U.S. at 197, 110 S.Ct. 1015.

**24.** *Id.*

**25.** *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 44 L.Ed. 842 (1900).

**26.** *See id.* at 195–96. This refusal is predicated, in large measure, on avoiding the nuances of state laws that dictate the structure of business organizations. Not only are there 50 different states with 50 different codes addressing business organizations, but these codes serve only as a default. Generally, individual business organizations' own rules dictate their internal operations. Just think about it.

**27.** *See generally Bouligny, see also Carden,* 494 U.S. at 192, 110 S.Ct. 1015 ("No doubt some members of the joint stock company in *Chapman,* the labor union in *Bouligny,* and the limited partnership association in *Great Southern* exercised greater control over their respective entities than other members. But such considerations have played no part in our decisions.")

**28.** *See generally Carden; Chapman.*

tion]" without even mentioning an official position.[29] The point is, business entities' most conspicuous component parts have been identified for the purpose of determining citizenship, without regard to nuances or particulars. Here, the Court is pointing to an obvious component part of a LLC—the owners—and in keeping with precedent, the extent of an owner's involvement in the daily operations of a company is not considered.

Finally, this Court will not extend the rule regarding citizenship of corporations to a LLC. The Supreme Court once decided that the individual citizenship of a corporation's owners—its shareholders—should no longer be taken into account when determining the corporation's overall citizenship.[30] The Court then vowed not to extend this rule to other business organizations. The holding in the instant case is an example of not extending the rule. At bottom, if this rule is too harsh, it is well within the power of elected representatives to expand federal courts' diversity jurisdiction, but that will not happen here.

### III. The Grinder's Dismissal Warrants Tiltware's Dismissal Under Rule 19

The Grinder destroys complete diversity of citizenship. He is also a "Required Party" under Rule 19(a). Because he can-

not be joined in this lawsuit, "equity and good conscience" under Rule 19(b) favor dismissal of Tiltware.

#### a. The Grinder is a "Required Party" under Rule 19(a)

█ As mentioned previously, whether or not the Grinder is in breach of his contract with Deliverance Poker is at the heart of this lawsuit. If the Court was to dismiss only the Grinder from this lawsuit and allow Deliverance and Tiltware to ante up, it would "as a practical matter impair or impeded [the Grinder's] ability to protect [his] interest[.]"[31] Consequently, the Grinder is a "Required Party" under Rule 19(a).

Assume the Court proceeds without the Grinder. In order to decide whether Tiltware tortiously interfered with the contract between the Grinder and Deliverance, the existence of a valid, enforceable contract must be determined.[32] It is true that any finding by this Court of a valid contract could not be held against the Grinder in a subsequent lawsuit in state court.[33] But Rule 19(a) is not coterminous with *res judicata*.[34] Rather, the Fifth Circuit has recognized that the establishment of a negative precedent against a nonparty is an adequate reason to label someone a "Required Party" under Rule 19(a).[35]

---

**29.** *Great Southern Fire Co.*, 177 U.S. at 456, 20 S.Ct. 690.

**30.** *See Marshall*, 16 How. at 329.

**31.** Fed.R.Civ.P. 19(a)(1)(B)(i) states that "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: as a practical matter impair or impede the person's ability to protect the interest[.]"

**32.** The elements of tortious interference with contract are: (1) the existence of a contract subject to interference; (2) an act of interfer-

ence that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex.1990).

**33.** *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

**34.** *See id.*; *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1310–13 (5th Cir.1986); *see also Read v. Phillips Petroleum Co.*, 441 F.Supp. 1184, 1186–87 (E.D.La.1977).

**35.** *See id.*

Here, even though the Grinder will not technically be "bound" if this Court finds there is a valid contract, it is hard to believe that this precedent will not "as a practical matter impair or impede" the Grinder's ability to protect his interests when he is arguing for the opposite result in a state court across the street. Thus, the Court holds that the Grinder is a "Required Party" under Rule 19(a) who should be joined if feasible.

### b. "Equity and Good Conscience" Under Rule 19(b) Favors Dismissing Tiltware

Once the Court has determined that the Grinder should be joined under Rule 19(a), and that his joinder would destroy diversity jurisdiction, the next step is to use the factors under Rule 19(b) to "determine whether in equity and good conscience the action should proceed among the existing parties or should be dismissed."[36] The Court holds that these factors weigh in favor of Tiltware's dismissal.

According to the Supreme Court, an analysis of Rule 19(b)'s factors may focus on four categories of interests:

> First to be considered is the plaintiff's interest in a federal forum, second, the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another," third, is the absen-tees' interest in avoiding prejudice from the proceeding, and fourth, the interests of the courts and the public in complete, consistent, and efficient settlement of controversies.[37]

Only the second category weighs in favor of moving forward with just Tiltware and Deliverance. This is not enough.

Progressing through the categories, first, the plaintiff's interest in a federal forum is minimal. This case involves only state contract and tort actions. A federal court in Texas is no better suited to deal with Texas jurisprudence than a Texas state court. Additionally, the Court is aware of no reason why the plaintiff cannot file this lawsuit in state court the minute this Order is published.[38] Second, Defendant Tiltware will not likely be subject to "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another" if the jury finds that it tortiously interfered with the contract between Deliverance and the Grinder. This is the only category that does not favor dismissal. Third, as discussed previously, the Grinder has a significant interest in avoiding the negative precedential value that may arise from this Court finding that the contract he entered into with Deliverance Poker is valid and enforceable. And Fourth, this case has been resident on the federal docket for seven months, and has required the Court's attention for dis-

---

36. *Pulitzer,* 784 F.2d at 1312.

37. *Id.* (noting that the Supreme Court in *Provident Tradesmens Bank & Trust Co. v. Patterson* "has stated that the factors enumerated in Rule 19(b) may be delineated as the interests that affect four categories of persons: the plaintiff, the defendant, the absentees, and the public" and then more specifically discussing those considerations).

38. To the Court's knowledge, there is neither a statute of limitations problem nor a personal jurisdiction problem that would prohibit filing this case in a Texas state court. A federal district court sitting in a diversity case may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999). Because Texas's long-arm statute reaches to the constitutional limits, the question we must resolve is whether exercising personal jurisdiction over the defendant offends due process. *Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir.2010).

covery disputes and failed attempts at Temporary Restraining Orders. But allowing a state court to dispose of this action in one fell swoop outweighs the minimal efforts of the federal judiciary that will go to waste by dismissing the case. Looking to the above factors, the plaintiff's one out of four will not do. Tiltware should be dismissed without prejudice along with the Grinder.

### IV. Conclusion

For the reasons set out above, Defendant Tiltware, LLC and Defendant Michael Mizrachi are **DISMISSED WITHOUT PREJUDICE.**